# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| ALPHA MODUS, CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  2:25-cv-00923 |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMAND** |
| THE KROGER CO., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alpha Modus, Corp. ("Alpha Modus" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against The Kroger Co. ("Kroger" or "Defendant") for infringement of United States Patent Nos. 10,360,571 (the "'571 Patent"), 10,977,672 (the "'672 Patent"), 11,042,890 (the "'890 Patent"), 11,301,880 (the "'880 Patent"), 11,049,120 (the "'120 Patent"), 12,026,731 (the "'731 Patent"), and 12,354,121 (the "'121 Patent").

Pursuant to 35 U.S.C. § 154 (d), Alpha Modus provides notice of additional patent claims that have been published in connection with United States Patent Application Serial No. 18/905,975 (the "'975 Application").  Alpha Modus has paid all required issue fees. Upon issuance, Alpha Modus intends to amend this Complaint to assert forthcoming U.S. Patent No. 12,___,___ and seek pre-issuance damages pursuant to 35 U.S.C. § 154 (d).[1] The '571 Patent, the '672 Patent, the '890 Patent, the '880 Patent, the '120 Patent, the '731 Patent, the '121 Patent, and the '975 Application are collectively referred to as the Asserted Patents.

---

[1] The precise patent number will be assigned by the United States Patent and Trademark Office upon notice of issuance.

## THE PARTIES

1.      Alpha Modus is a corporation organized and existing under the laws of Florida and located at 20311 Chartwell Center Dr., Suite 1469, Cornelius, North Carolina 28031.

2.      Upon information and belief, Defendant Kroger is a company organized and existing under the laws of Ohio, with a principal place of business located at 1014 Vine Street, Cincinnati, Ohio 45202, and may be served with process through its registered agent, Corporation Service Company, d/b/a CSC-Lawyers Incorporating Service, at 211 E. 7th Street, Suite 620, Austin, TX 78701.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 154, 271, 281, and 283-285.

4.      This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

5.      Kroger is subject to the general and specific personal jurisdiction of this Court, based upon its regularly conducted business in the State of Texas and, on information and belief, in the Eastern District of Texas ("District"), including conduct giving rise to this action.

6.      Kroger has conducted and does conduct business within the State of Texas.

7.      Kroger has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

8.      This Court has personal jurisdiction over Kroger at least because Kroger has made, used, offered to sell, sold, or put into service the accused products, systems, or services within the State of Texas and, on information and belief, within this District, thus committing acts of

infringement within the District, and has placed infringing products, systems, or services into the stream of commerce knowing or understanding that such products, systems, or services would be used in the United States, including in the Eastern District of Texas. Kroger, thus, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell, selling products and/or services, and/or using services that infringe the Asserted Patents.

9.     This Court likewise has personal jurisdiction over Kroger at least because, on information and belief, Kroger has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Kroger would not offend traditional notions of fair play and substantial justice.

10.     This Court has specific personal jurisdiction over Kroger in this action pursuant to due process and the Texas Long Arm Statute because the claims asserted herein arise out of or are related to Kroger's voluntary contacts with this forum, such voluntary contacts including but not limited to: (i) at least a portion of the actions complained of herein; (ii) purposefully and voluntarily placing one or more Accused Products into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Products.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c)(3).

12.     Kroger is registered to do business in Texas, has transacted business in this District, and has committed acts of direct and indirect infringement in this District

13.     Kroger has regular and established places of business in this District.

14.     Kroger operates multiple stores in this District, such as at: (1) 300 E. End Blvd. N, Marshall, Texas 75670; (2) 701 W. Marshall Ave., Longview, Texas 75601; (3) 2415 US-79,

Henderson, Texas 75654; (4) 3205 N. University Dr., Nacogdoches, Texas 75965; (5) 325 E. Spring St., Palestine, Texas 75801; and (6) 1215 North St, Nacogdoches, Texas 75961. These stores are regular and established places of business of Kroger.

15.     Kroger has previously consented to jurisdiction and venue in this District, for example, in *Tiare Tech., Inc. v. Kroger Co*., Case No. 2:22-cv-491-JRG (E.D. Tex. 2022) and *Alpha Modus Corp. v. The Kroger Co*., Case No. 2:24-cv-00022-JRG-RSP (E.D. Tex. 2024).

## ALPHA MODUS'S INNOVATION IN RETAIL TECHNOLOGY

16.     Alpha Modus Corp. specializes in the development of innovative retail technologies.

17.     At the core of Alpha Modus's technology portfolio, including the Asserted Patents, is the capability to analyze consumer behavior and product interaction in real-time. This advanced capability allows businesses to dynamically adjust their marketing strategies to meet the immediate needs of consumers at pivotal purchasing decision moments.

18.     Alpha Modus, in an effort to ensure transparency and accessibility, maintains a comprehensive presentation of its patent portfolio on its official company website, available at https://alphamodus.com/what-we-do/patent-portfolio/. The patent portfolio provided on Alpha Modus's website lists the Asserted Patents.

19.     On January 11, 2024, Alpha Modus entered into a substantial intellectual property licensing agreement with GZ6G Technologies Corp. *See* Alpha Modus Announces Intellectual Property License Agreement with GZ6G Technologies Corp., available at https://alphamodus.com/2024/01/12/alpha-modus-announces-intellectual-property-license-agreement-with-gz6g-technologies-corp/. This agreement authorized GZ6G Technologies Corp.

to utilize Alpha Modus's patented technology in their operations, with a particular focus on the Stadium and Event Management industry.

20.     The agreement with GZ6G Technologies Corp., a provider of advanced technology solutions for connectivity and digital experiences, is indicative of Alpha Modus's commitment to legally disseminating its patented technology.

## THE '571 PATENT

21.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,360,571 ("the '571 Patent") titled "Method For Monitoring And Analyzing Behavior And Uses Thereof," including the right to sue for all past, present, and future infringement. A true and correct copy of the '571 Patent is attached to this Complaint at Exhibit A.

22.     The '571 Patent issued from U.S. Patent Application Serial No. 14/335,429.

23.     The '571 Patent claims the benefit of U.S. Patent Application Serial No. 61/856,525, filed on July 19, 2013.

24.     The Patent Office issued the '571 Patent on July 23, 2019, after a full and fair examination.

25.     The '571 Patent is valid and enforceable.

26.     The '571 Patent relates to a method for monitoring and analyzing consumer behavior in real-time, particularly within retail environments. It utilizes various information monitoring devices to collect data about consumers, enhancing their shopping experience through targeted and personalized digital interactions.

27.     The inventors of the '571 Patent identified a critical need in the retail industry, especially brick-and-mortar stores, to adapt to the evolving shopping habits influenced by online

retail and social media. The patent addresses the challenge of providing an enriched in-store experience that rivals online shopping, thus countering trends like showrooming.

28.    The '571 Patent provides several advantages over the prior art such as providing a method for real-time analysis and utilization of collected shopper data, including demographic, sentiment, and tracking information, to deliver personalized marketing, engagement, and promotional material directly influencing the consumer's purchasing decision.



FIG. 1



FIG. 2

29.    The '571 Patent describes and claims a specific method that involves using information monitoring devices, like video image devices, to gather data about shoppers. This data includes demographic characteristics (such as gender and age), sentiment, and tracking details (like

movement and eye tracking). The patent details the process of analyzing this data in real-time and providing various responses, such as targeted marketing, personal engagement, or offering coupons, to enhance the shopping experience.

30.    Claim 1 of the '571 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about persons in a group of persons at a location, wherein
    (i) the persons are each in proximity of at least one of the one or more information monitoring devices at the location, wherein
    (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,
    (iii) the one or more information monitoring devices comprise one or more video image devices;
    (iv) the step of gathering information using the one or more information monitoring devices comprises gathering a demographic characteristic of the persons in the group of persons using the one or more video image devices, wherein the demographic characteristic is selected from a group consisting of gender of the persons, approximate age of the persons, and combinations thereof,
    (v) the step of gathering information using the one or more information monitoring devices comprises gathering a sentiment characteristic of the persons in the group of persons using the one or more video image devices,
    (vi) the step of gathering information using the one or more information monitoring devices comprises gathering a tracking characteristic of the persons in the group of persons, wherein the tracking characteristic of the persons is selected from a group consisting of movement of the persons relative to the one more information monitoring devices, eye movement of the persons tracked by the one or more video image devices, and combinations thereof,
(b) providing an opt-out option to the persons in the group of persons, wherein after receipt of an affirmation of the opt-out option from an opt-out person, the opt-out person is in the subset of the opt-out persons,
(c) analyzing in real time using (A) the server, (B) the one or more databases, or (C) both the information gathered by the information monitoring devices of the persons in the group of persons, except for the subset of opt-out persons who have affirmatively opted-out, wherein the analyzed information comprises the demographic characteristic of the persons, the sentiment characteristic of the persons, and the tracking information of the persons; and
(d) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

(i) engaging the person based upon the analyzed information of the person, wherein the engaging is performed using one or more displays and content being displayed on the one or more displays is selected based upon the analyzed information,

(ii) sending a communication to a second person at the location who can then in real time directly interact with the person regarding at least a portion of the analyzed information,

(iii) providing marketing or advertising information to the person in real time based upon the analyzed information, wherein the marketing or advertising information is either provided to the person by a display at the location or by sending the marketing or advertising information to the mobile device of the person, and

(iv) providing a coupon to the person in real time based upon the analyzed information, wherein the coupon is either a printed out coupon or is a digital coupon.

## THE '672 PATENT

31.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,977,672 (the "'672 Patent") titled "Method And System For Real-Time Inventory Management, Marketing, And Advertising In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '672 Patent is attached to this Complaint at Exhibit B.

32.    The '672 Patent issued from U.S. Patent Application No. 16/985,001 filed on August 4, 2020.

33.    The '672 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

34.    The Patent Office issued the '672 Patent on April 13, 2021, after a full and fair examination.

35.    The '672 Patent is valid and enforceable.

36.    The '672 Patent introduces a novel system for real-time inventory management, marketing, and advertising within a retail store setting.

37.    The '672 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of the increasing prevalence of online shopping and the phenomenon of showrooming. The patent provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail.

38.    The inventors of the '672 Patent recognized that there existed a significant gap in the brick-and-mortar retail sector's ability to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method and system that bridges this gap by utilizing technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies.

39.    The '672 Patent provides several advantages over the prior art, such as real-time inventory management and the ability to generate targeted promotions and advertising based on behavioral analytics. This approach aims to provide more relevant and engaging consumer experiences, thereby influencing purchasing decisions and potentially increasing in-store sales.



FIG. 1



*FIG. 2*

40.    The '672 Patent describes and claims a specific system incorporating servers, image recognition, and information monitoring devices to manage inventory, display relevant product information and pricing, and generate promotions for customers based on real-time data analysis.

41.    Claim 1 of the '672 Patent reads:

1. A system for real-time inventory management, marketing, and advertising on a first visual display at a first visual display location in a retail store, comprising:
(a) a server comprising:
    (i) one or more server processors, and,
    (ii) a server memory storing computer-executable instructions that, when executed by the one or more server processors, cause the server to:
        (A) identify, via image recognition, an inventory of one or more retail products physically located at the first visual display location in the retail store,
        (B) display, on the first visual display, information about one or more of the one or more retail products physically located at the first visual display location,
        (C) determine, in real-time, current pricing information regarding the one or more retail products physically located at the first visual display location,
        (D) display, on the first visual display, the current pricing information regarding the one or more retail products physically located at the first visual display location,
        (E) receive, using one or more information monitoring devices at the first visual display location, real-time data of a customer, and
        (F) generate a promotion of one or more of the one or more retail products physically located at the first visual display location for the customer based on behavioral analytics.

## THE '890 PATENT

42.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,042,890 (the "'890 Patent") titled "Method And System For Customer Assistance In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '890 Patent is attached to this Complaint at Exhibit C.

43.    The '890 Patent issued from U.S. Patent Application No. 16/837,711, filed on April 1, 2020.

44.    The '890 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

45.    The Patent Office issued the '890 Patent on June 22, 2021, after a full and fair examination.

46.    The '890 Patent is valid and enforceable.

47.    The '890 Patent relates to an improved method for enhancing customer assistance in retail stores through the use of advanced information monitoring systems.

48.    The inventors of the '890 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior influenced by digital technology. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing targeted assistance and enhancing the shopping experience.

49.    The '890 Patent provides several advancements over previous methods, such as real-time analysis of customer interactions with products, including sentiment and object identification information, and utilizing this data to manage inventory and offer personalized responses.



FIG. 1



FIG. 2

50.     The '890 Patent describes and claims a specific method involving the use of information monitoring devices to gather and analyze data about a customer's interaction with products in a retail store. This method includes steps for gathering object identification and sentiment information about the product, analyzing this information in real-time, and providing appropriate responses to enhance the customer's shopping experience.

51.     Claim 1 of the '890 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about
    a person at a retail store, wherein
        (i) the person is in proximity to at least one of the one or more information
            monitoring devices at the retail store,

      (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both, and

      (iii) the step of gathering information using the one or more information monitoring devices comprises

            (A) gathering object identification information of a product that the person is interested in purchasing, and

            (B) gathering sentiment information of the person with respect to the product;

(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the object identification information and the sentiment information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

      (i) sending a communication to the person directing the person to a location in the retail store at which the person can interact with the product,

      (ii) engaging the person based upon the product, wherein the engaging is performed using one more displays and content being displayed on the one or more displays is selected based upon the product,

      (iii) sending a communication to a second person in the retail store who can then in real time interact with the person regarding the product,

      (iv) providing marketing or advertising information to the person in real time based upon the product, wherein the marketing or advertising information is either product to the person by a display at the retail store or by sending the marketing or advertising information to a mobile device of the person, and

      (v) providing a coupon to the person in real time based upon the product, wherein the coupon is either a printed out coupon or a digital coupon.

## THE '880 PATENT

52.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,301,880 (the "'880 Patent") titled "Method And System For Inventory Management In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '880 Patent is attached to this Complaint at Exhibit D.

53.    The '880 Patent issued from U.S. Patent Application No. 16/837,645 filed on April 1, 2020.

54.    The '880 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

55.    The Patent Office issued the '880 Patent on April 12, 2022, after a full and fair examination.

56.    The '880 Patent is valid and enforceable.

57.    The '880 Patent introduces a novel method and system for real-time inventory management within a retail store setting, designed to improve operational efficiency and customer experience.

58.    The '880 Patent addresses the emerging challenges faced by brick-and-mortar retail stores due to the increasing prevalence of online shopping and showrooming. It provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail by leveraging real-time data analysis and inventory management strategies.

59.    The inventors of the '880 Patent recognized that there existed a significant gap in the brick-and-mortar retail sector's ability to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method and system that bridges this gap by utilizing technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies.

60.    The '880 Patent provides several advantages over the prior art, such as real-time tracking of product interactions and the ability to send immediate responses for inventory

adjustments. This method aims to minimize stockouts, enhance customer satisfaction, and boost sales by ensuring the availability of popular products.



FIG. 1



FIG. 2

61.    The '880 Patent describes and claims a specific system incorporating servers, image recognition, and information monitoring devices to manage inventory, track product interactions, and generate real-time responses for inventory management based on data analysis.

62.    Claim 1 of the '880 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about shopping activities of a plurality of persons at a retail store, wherein
         (i) the retail store comprises a plurality of products that are stocked within the retail store, wherein the plurality of products are stocked upon one or

more product points selected from a group consisting of shelves, end caps, displays, and combinations thereof,

(ii) persons in the plurality of persons are in proximity to at least one of the one or more information monitoring devices at the retail store,

(iii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both;

(iv) the one or more information monitoring devices comprise one or more video image devices,

(vi) the step of gathering information using the one or more information monitoring devices comprises

    (A) gathering product interaction information based upon product interactions the persons have with one or more products in the retail store, wherein the product interactions information comprises (I) the one or more products are picked up by the persons at the retail store, and (II) the one or more products are carried away by the persons at each of the retail store, and

    (B) gathering object identification information of the one or more products that the persons interacted with during the product interactions;

(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the product interaction information and the object identification information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

    (i) sending a communication to a retail person to check inventory levels for a first product of the one or more products at the product point for the first product,

    (ii) sending a communication to the retail store person to immediately re-stock the one or more first products at the product point for the first product,

    (iii) sending a communication to the retail store person to contact a distribution center to obtain the one or more first products for delivery to the retail store for restocking the one or more first products at the product point for the first product, and

    (iv) sending a communication to add one or more first products to an inventory order for inventory for the retail store.

## THE '120 PATENT

63.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,049,120 (the "'120

Patent") titled "Method And System For Generating A Layout For Placement Of Products In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '120 Patent is attached to this Complaint at Exhibit E.

64.     The '120 Patent issued from U.S. Patent Application No. 16/837,577 filed on April 1, 2020, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

65.     The Patent Office issued the '120 Patent on June 29, 2021, after a full and fair examination.

66.     The '120 Patent is valid and enforceable.

67.     The '120 Patent introduces a novel system for tracking customer movement and for optimizing the layout of products provided within a retail store setting.

68.     The '120 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of monitoring and analyzing consumer behavior in the retail store in order to better optimize the layout of product available within the store using that information and analysis thereof. The patent provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail.

69.     The inventors of the '120 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior in order to better optimize the layout of products within the retail store using behavior information from consumers. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing updated store layout suggestions by analyzing that information in order to enhance realized purchases and revenues from shoppers.

70.     The '120 Patent provides several advancements over previous methods, such as real-time analysis of customer traffic within the store as well as customers' interactions with products, and utilizing this data to improve the layout of products available in the store.



FIG. 1



FIG. 2

71.     The '120 Patent describes and claims a specific system incorporating servers, video imaging devices such as cameras, and information monitoring devices to monitor customer movement and generate improved store layouts utilizing data analysis.

72.     Claim 1 of the '120 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about shopping activities of a plurality of persons at a retail store, wherein

(i) the retail store has a first layout of products within and about the retail store,

(ii) persons in the plurality of persons are in proximity to at least one of the one or more information monitoring devices at the retail store,

(iii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,

(iv) the one or more information monitoring devices comprise one or more video image devices,

(v) the step of gathering information using the one or more information monitoring devices comprises

(A) gathering traffic information of the persons within and about the retail store, wherein the traffic information comprises (I) tracking movement of the persons relative to the one or more information monitoring devices, (II) identification of one or more stops that the persons make within and about the retail store, and (III) tracking position and duration of stop of the persons for each of the one or more stops,

(B) gathering product interaction information based upon type of interactions the persons had with one or more products in the retail store, wherein the type of product interactions are selected from a group consisting of (I) the one or more products are viewed by the persons at each of the one or more stops, (II) the one or more products are picked up by the persons at each of the one or more stops, (III) the one or more products are carried away by the persons at each of the stops, and (IV) combinations thereof, and

(C) gathering object identification information of the one or more products that the persons interacted with during the product interactions;

(b) analyzing the information gathered by the information monitoring devices about the shopping activities of the plurality of persons to generate a layout analysis, wherein the analyzed information comprises the tracking information, the product interaction information, and the object identification information; and

(c) utilizing the layout analysis to modify the first layout to generate a second layout of the products within and about the retail store.

## THE '731 PATENT

73.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,026,731 (the "'731 Patent") titled "Method For Personalized Marketing And Advertising Of Retail Products,"

including the right to sue for all past, present, and future infringement. A true and correct copy of the '731 Patent is attached to this Complaint at Exhibit F.

74.    The '731 Patent issued from U.S. Patent Application No. 18/100,377 filed on January 23, 2023.

75.    The '731 Patent is a continuation of application No. 17/590,605, filed on Feb. 1, 20022.

76.    The Patent Office issued the '731 Patent on July 2, 2024, after a full and fair examination.

77.    The '731 Patent is valid and enforceable.

78.    The '731 Patent introduces a novel method for obtaining an information analysis of a shopper's activities, for tracking the shopper using information monitoring devices to determine location, and for providing targeted communications to that shopper based on their shopping history and real-time location.

79.    The '731 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of delivering personalized marketing and advertising tied to in-store behavior and purchase activity. The patent provides innovative solutions for enhancing consumer engagement and driving sales by delivering targeted coupons, promotions, and product information directly to shoppers.

80.    The inventors of the '731 Patent recognized the need for retailers to adapt to changing consumer behavior by using in-store monitoring technologies to gather information about a shopper's interactions with products, track their location, and then provide communications that direct the shopper to a retail store location and deliver personalized advertising or purchase options.

81.     The '731 Patent provides several advancements over previous methods, such as real-time analysis of consumer product interactions, real-time shopper location tracking, and using this information to provide communications including marketing advertisements, digital coupons, store-specific promotions, and purchase options such as pickup, delivery, or reduced price offers.

82.     The '731 Patent describes and claims a specific system incorporating servers, databases, and information monitoring devices including video image devices to monitor shopping activity, track consumer location, generate a real-time analysis of shopper behavior, and provide personalized product communications and store location information via interactive devices.

83.     Claim 1 of the '731 Patent reads:

1. A method for personalized marketing or advertising of one or more products for purchase by a plurality of persons from retail stores, wherein, for each person in the plurality of persons, the method comprising:
(a) obtaining an information analysis about the shopping activities of the person, wherein,
    (i) the information analysis is an analysis of gathered information by one or more first information monitoring devices about shopping activities of the person,
    (ii) the gathered information comprises gathered product interaction information of the person, wherein
        (A) the gathered product interaction information comprises product interaction information gathered by at least one of the one or more first information monitoring devices, and
        (B) the product interaction information is based upon shopping by the person of one or more first products,
(b) tracking the person using one or more second information monitoring devices to determine the location of the person;
(c) based upon the determined location of the person, providing the person, via a first interactive device, a communication, wherein the communication comprises
    (i) a location communication comprising a retail store location at which the person can purchase a product, wherein the product relates to at least one of the one or more first products, and
    (ii) a product communication that is directed to the person based upon the information analysis and that is selected from the group consisting of
        (A) a product communication of marketing or advertising information regarding the product,
        (B) a product communication of a coupon regarding the product, wherein the coupon is received by the person either as a printed out coupon or as a digital coupon,

(C) a product communication of a coupon regarding one or more products that relate to the product, wherein the coupon is received by the person either as a printed out coupon or as a digital coupon,

(D) a product communication regarding a purchase option for the product, wherein the purchase option comprises an option to ship the product to the person or an option for the person to pick-up the product, and

(E) a product communication regarding a purchase option for the product, wherein the purchase option comprises an option to purchase the product at a reduced price during a limited period of time.

## THE '121 PATENT

84.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,354,121 (the "'121 Patent") titled "Method And System For Shopping In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '121 Patent is attached to this Complaint at Exhibit G.

85.     The '121 Patent issued from U.S. Patent Application No. 18/651,410 filed on April 30, 2024, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

86.     The Patent Office issued the '121 Patent on July 8, 2025, after a full and fair examination.

87.     The '121 Patent is valid and enforceable.

88.     The '121 Patent introduces a novel system for tracking customer movement, for tracking products retained while shopping, for tracking to a point-of-sale area, and for interfacing with this information in the point-of-sale area for payment of the products.

89.     The '121 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of monitoring products retained for purchase and for allowing purchase of the products by the shopper within the point-of-sale area. The patent provides

innovative solutions to enhance in-store customer experiences and to increase the speed and efficacy of the shopper's purchase transaction.

90.     The inventors of the '121 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior in order to better optimize the shopper's purchase experience in a retail store by recording the users location during shopping, the items retained by the customer for purchase, and then providing a seamless purchase experience for the shopper at the point-of-sale area of the retail store.

91.     The '121 Patent provides several advancements over previous methods, such as real-time analysis of customer traffic within the store as well as customers' interactions with products, and utilizing this data to improve the speed and ease of the customer's purchase experience.



*FIG. 1*



*FIG. 2*

92.     The '121 Patent describes and claims a specific system incorporating servers, video imaging devices such as cameras, and information monitoring devices to monitor customer movement and items selected for purchase, maintain a list of items selected for purchase, and providing for purchase of such items in the point-of-sale area of the retail store.

93.     Claim 1 of the '121 Patent reads:

1. A method comprising using a system comprising a server, one or more information monitoring devices, and one or more databases, wherein the method comprises:
(a) using at least one of the one or more information monitoring devices to identify a first person at a retail store, wherein
 (i) the first person is in proximity of at least one of the one or more information monitoring devices at the retail store,
 (ii) the one or more first information monitoring devices are selected from a group consisting of computing devices, user input and output devices, displays, POS devices, cameras, sensors; WIFI devices; in-store customer devices; output devices; system for communicating to user devices, and kiosks, and
 (iii) the one or more information monitoring devices are operably connected to (A) the server, (B) the one or more databases, or (C) both;
(b) using at least one of the one or more of the information monitoring devices to gather shopping information of the first person at the retail store, wherein
 (i) the gathered shopping information comprises gathered traffic information of the first person, wherein
  (A) the gathered traffic information comprises traffic information of the first person gathered by at least one of the one or more information monitoring devices, and

(B) the traffic information comprises identification of one or more stops that the first person makes within and about the retail store,

(ii) the gathered shopping information further comprises gathered product interaction information of the first person at the retail store, wherein

(A) the gathered product interaction information comprises product interaction information of the first person gathered by at least one of the one or more information monitoring devices, and

(B) the product interaction information is based upon type of product interactions the first person had with one or more products at the retail store, wherein the type of product interactions are selected from a group consisting of (I) the one or more products viewed by the first person at the retail store at each of the one or more stops, (II) the one or more products picked up by the first person at the retail store at each of the one or more stops, (III) the one or more products put down by the first person at the retail store at each of the one or more stops, ((IV) the one or more products carried away by the first person at the retail at each of the one or more stops, and (V) combinations thereof, and

(iii) the gathered shopping information further comprises gathered object identification information, wherein

(A) the gathered object identification information comprises object identification information gathered by at least one of the one or more information monitoring devices, and

(B) the object identification information comprises the one or more products that the first person interacted with during the product interactions; and

(c) analyzing by the system, in real time, the gathered shopping information to generate and maintain a list of the one or more products that the first person interacted with during the product interactions, wherein the list comprises a listing of the products retained by the first person while shopping at the retail store;

(d) using the one or more of the information monitoring devices to track the first person to a point-of-sale area of the retail store;

(e) in response to the first person being tracked to the point-of-sale area, interfacing the system, in real time, with a payment system for payment by the first person of the list of the products retained by the first person while shopping at the retail store at the point-of-sale area; and

(f) transmitting a receipt to the first person after payment by the first person, wherein the receipt comprises the list of the products purchased at the retail store.

## THE '975 APPLICATION

94.    Alpha Modus filed United States Patent Application Serial No. 18/905,975 (the "'975 Application"), on October 3, 2024, which is a continuation of United States Patent Application Serial No. 18/651,410, filed on April 30, 2024, which is a continuation of United States Patent Application Serial No. 18/519,550, filed on November 27, 2023, which is a continuation of United States Patent Application Serial No. 18/100,377, filed on January 23, 2023, now U.S. Patent No. 12,026,731, which is a continuation of United States Patent Application Serial No. 17/590,605, filed on February 1, 2022, now U.S. Patent No. 12,039,550, which is a continuation of United States Patent Application Serial No. 16/837,645, filed on April 1, 2020, now U.S. Patent No.11,301,880, which is a continuation of United States Patent Application Serial No.16/509,343, filed on July 11, 2019, now U.S. Patent No.10,853,825, which is a continuation of United States Patent Application Serial No.14/335,429, filed on July 18, 2014, now U.S. Patent No. 10,360,571. A true and correct copy of the '975 Application is attached to this Complaint at Exhibit H.

95.    The United States Patent and Trademark Office published the '975 Application on January 23, 2025.

96.    Since January 23, 2025, all papers in the '975 Application prosecution file have been available to the public.

97.    On April 22, 2025, the USPTO allowed claims 27-44 of the '975 Application.

98.    On July 8, 2025, Alpha Modus paid the issue fee.

99.    The '975 Application will issue in a form substantially identical to the claims listed in Exhibit H.

100.    The '975 Application introduces a novel method for using information monitoring devices within a retail store to gather information about individual shoppers, including tracking products retained while shopping, monitoring the shopper's movement to a point-of-sale area, and identifying products being purchased at checkout.

101.    The '975 Application addresses the challenges brick-and-mortar retailers face in understanding customer behavior, ensuring the accuracy of product tracking, and improving real-time interactions between shoppers and sales associates. The application provides innovative solutions that leverage video imaging devices and other monitoring systems to generate actionable data during the shopping and purchasing process.

102.    The inventors of the '975 Application recognized the need for retailers to adapt to evolving consumer behavior by implementing systems capable of analyzing shopper behavior in real time, maintaining accurate records of retained and being-purchased products, and enabling targeted assistance by sales associates to improve both efficiency and personalization in the purchase experience.

103.    The '975 Application provides several advancements over prior systems, including the ability to generate and compare lists of products retained and products being purchased, detect discrepancies, and utilize this real-time comparison to automatically select and notify a sales associate. These improvements enhance transaction accuracy, operational speed, and the overall customer experience in the retail environment.

104.    The '975 Application describes and claims a specific system comprising servers, databases, video imaging devices, and other information monitoring devices to gather and analyze shopper information, maintain product lists, and communicate this information to sales associates for direct interaction with shoppers in the store.

105.    Claim 27 of the '975 Application reads:

27.A method comprising:
(a) using one or more information monitoring devices to gather information about a first person in a group of persons at a retail store, wherein

    (i) the first person is in proximity of at least one of the one or more information monitoring devices at the retail store,

    (ii) the one or more information monitoring devices are operably connected to

        (A) a server,

        (B) one or more databases, or

        (C) both,

    (iii) the one or more information monitoring devices comprise one or more video image devices, and

    (iv) the step of gathering information using the one or more information monitoring devices comprises

        (A) gathering information of one or more products that the first person retained while shopping at the store,

        (B) tracking the first person to a point-of-sale area of the retail store, and

        (C) utilizing the one or more information monitoring devices to identify one or more being-purchased products that the person is providing for purchase at the retail store in the point-of-sale area;

(b) analyzing by the system, in real time, the information gathered by the information monitoring devices to

    (i) generate and maintain a list of the one or more products retained by the first person while shopping at the retail store, wherein the list comprises a listing of the products retained by the person while shopping at the retail store;

    (ii) generate a listing of the one or more being-purchased products;

    (iii) comparing the listing of the products retained by the person while shopping at the retail store with the listing of the one or more being- purchased products;

(c) in response to at least some of the comparisons generated by the system, utilizing the real time analysis to select a sales associate from a group of sales associates at the retail store; and

(d) sending a communication to the sales associate that comprises at least a portion of (i) the information gathered by the information monitoring devices, (ii) the real time analysis, or (iii) both; wherein the sales representative can then directly interact with the first person in response to the communication.

## <u>KROGER</u>

106.    Kroger is one of the largest supermarket chains in the United States, known for its

wide range of grocery products, pharmacies, and general retail offerings.

107.    On January 24, 2024, Alpha Modus sued Kroger for infringement of the '571, '672,

and '890 Patents as to Kroger's implementation of digital smart screens provided by Cooler

Screens. *See Alpha Modus Corp. v. The Kroger Co.*, Case No. 2:24-cv-00022-JRG-RSP (E.D. Tex. 2024).

108.    The Parties settled all claims related to Kroger's implementation of Cooler Screens's technology in April of 2025.

109.    Plaintiff recently learned that, despite knowledge of Plaintiff and its patents, and without a license, Kroger has begun implementation of digital in-store platforms made by Barrows Connected Store in connection with its subsidiary. These products include cameras and implement Bluezoo's audience measurement technology.



Kroger's new display network (Image: Kroger)     Kroger's new display network (Image: Kroger)



Kroger's new display network (Image: Kroger)     Kroger's new display network (Image: Kroger)

https://www.sixteen-nine.net/2025/06/24/us-grocer-kroger-equips-stores-with-custom-made-screens.

110.    Kroger also implements several anti-theft technologies that stop all skip-scanning at self-checkout, including the Everseen Visual AI platform:

> The Everseen Visual AI platform captures large volumes of unstructured video data, which it integrates with structured POS data feeds to analyzes and make inferences about data in real time. To support the platform, Kroger is deploying Lenovo Edge AI servers equipped with Nvidia GPUs.

> Each Lenovo server is capable of handling unstructured data from up to 20 high-resolution cameras in real time. Video data is sent from the Visual AI platform at self-checkouts to the Lenovo Edge AI infrastructure. GPU acceleration for AI and analytics enables the company to analyze data in real time for instant insights into activity at the checkout.
>
> For example, if a shopper fails to scan an item successfully, the self-checkout system will flag the error on screen and prompt the customer to self-correct. If the customer is unable to resolve the issue themselves, the system will alert a store associate via a mobile device, so they can intervene and rescan the item"

https://chainstoreage.com/kroger-rolls-out-visual-ai-based-self-checkout; *see*

https://www.delimarketnews.com/buyside-news/kroger-nabs-new-partner-everseen-prepares-roll-out-new-ai-software-Mike-Lamb-Chris-Taylor/anne-allen/tue-09222020-0851/10422

(quoting Mike Lamb, Vice President of Asset Protection, Kroger, "By leveraging Everseen's Visual AI and machine learning technology, we're not only able to remove friction for the customer, but we can also remove controllable costs from the business and redirect those resources to improving the customer experience even more").

111. This technology is implemented through the Kroger family of stores to tighten shrinkage claims. *See* https://chainstoreage.com/kroger-launches-ambitious-ai-transformation-program.

112. The Barrows digital in-store platform and Kroger's digital/online ecosystem which includes Kroger Precisions Marketing and 84.51°, together with Kroger's in-store technologies such as, including, but not limited to, Everseen, Scan, Bag, Go, Kroger Pay, KroGO smart carts, QueVision, and EDGE Shelving all comprise the "Accused Products" that infringe the Asserted Patents in this case.

113. On August 4, 2024, Kroger was sent a letter from Senators Elizabeth Warren and Robert P. Casey, Jr. warning Kroger about its planned use of "use facial recognition tools to determine the gender and age of a customer captured on camera and present them with

personalized offers and advertisements." Nevertheless, Kroger has implemented these technologies and once again infringed Plaintiff's patents. https://www.warren.senate.gov/imo/media/doc/warren_casey_letter_to_kroger_re_electronic_shelving_and_price_gouging.pdf

114.    The Accused Products practice the patented systems and methods of the Asserted Patents.

115.    Kroger has been aware of Alpha Modus and the Asserted Patents at least as early as the filing of Plaintiff's first complaint against Kroger in January of 2024.

116.    The financial gains accrued by Kroger through the use of Alpha Modus's patented technology have been substantial, providing Kroger with competitive advantages in the retail market.

117.    The benefits reaped by Kroger through the exploitation of Alpha Modus's intellectual property have resulted in corresponding harm to Alpha Modus. This harm includes but is not limited to lost business opportunities, revenue, and diminution of the value of its patented technology.

118.    This case is filed to address and seek redress for the unauthorized use of Alpha Modus's patented technology by Kroger, which has led to significant commercial gains for Kroger at the expense of Alpha Modus's proprietary rights and investments.

## COUNT I

## (DIRECT INFRINGEMENT OF THE '571 PATENT)

119.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

120.    Kroger has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '571 Patent, including the Accused Products.

121.    The Accused Products utilize one or more information monitoring devices, including video image devices, to gather information about persons at a location, specifically in Kroger's retail stores.

122.    The Accused Products include systems operably connected to a server and/or one or more databases, which analyze the information gathered by the information monitoring devices.

123.    The Accused Products collect demographic characteristics, sentiment characteristics, and tracking characteristics of persons in proximity to the information monitoring devices in stores.

124.    The Accused Products provide an opt-out option to the persons in proximity to the devices and analyze the information of those who have not opted out.

125.    Kroger has directly infringed the '571 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '571 Patent.

126.    The Accused Products satisfy each and every element of the asserted claim of the '571 Patent either literally or under the doctrine of equivalents.

127.    Kroger's infringing activities are and have been without authority or license under the '571 Patent.

128.    As a direct and proximate result of Kroger's infringement of the '571 Patent, Alpha Modus has suffered and will continue to suffer damage.

129.    Alpha Modus is informed and believes, and on that basis alleges, that Kroger has been aware of the '571 Patent and its infringement thereof due to the fact that Kroger was sued in

January of 2024 for infringement of some of the same patents asserted in this case due to its implementation of Cooler Screens technology. Despite this knowledge, Kroger has continued to make, use, sell, and offer for sale the Accused Products.

130.    Alpha Modus is informed and believes that Kroger knew or was willfully blind to the patented technology of the '571 Patent. Despite this knowledge or willful blindness, Kroger has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

131.    Alpha Modus is informed and believes that Kroger has made no efforts to avoid infringement of the '571 Patent, despite its knowledge and understanding that its products and systems infringe the '571 Patent.

132.    Therefore, Kroger's infringement of the '571 Patent is willful and egregious, warranting an enhancement of damages.

133.    As such, Kroger has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '571 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT II

## (INDUCED PATENT INFRINGEMENT OF THE '571 PATENT)

134.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

135.    Kroger is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '571 Patent, at least as early as the January of 2024, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '571 Patent.

136.    As detailed above, Kroger was sued by Alpha Modus for infringing a subset of the Asserted Patents in January of 2024, including the '571 Patent, due to its implementation of Cooler Screens technology. During the course of this first lawsuit Kroger obviously became aware of Alpha Modus's patents and the technology covered by such patents.

137.    Kroger has implemented and utilized the Accused Products in its stores, which practice the patented methods of the '571 Patent.

138.    Kroger's use of the Accused Products demonstrates specific intent to induce infringement of the '571 Patent. Kroger encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '571 Patent.

139.    Kroger's knowledge of the '571 Patent, combined with its ongoing use of the Accused Products, demonstrates Kroger's knowledge and intent that the Accused Products be used in a manner that infringes the '571 Patent.

140.    Kroger's actions and the manner in which the Accused Products are used in its stores, consistent with Kroger's promotions and instructions, demonstrate Kroger's specific intent to induce infringement of the '571 Patent.

141.    Alpha Modus is informed and believes, and on that basis alleges, that Kroger knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with its customers, one or more claims of the '571 Patent.

142.    As a direct and proximate result of Kroger's induced infringement of the '571 Patent, Alpha Modus has suffered and will continue to suffer damage.

143.    Alpha Modus is entitled to recover from Kroger compensation in the form of monetary damages suffered as a result of Kroger's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT III

### (DIRECT INFRINGEMENT OF THE '672 PATENT)

144.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

145.    Kroger has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '672 Patent, including the digital smart carts of the Accused Products.

146.    The Accused Products embody a system for real-time inventory management, marketing, and advertising in a retail store setting, as claimed in the '672 Patent.

147.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '672 Patent.

148.    The functions include identifying, via image recognition, an inventory of retail products physically located at a display location in the store, displaying information about the products, determining and displaying current pricing information, receiving real-time data of a customer using one or more information monitoring devices, and generating promotions for the customer based on behavioral analytics.

149.    Kroger has directly infringed the '672 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '672 Patent.

150.    The Accused Products satisfy each and every element of the asserted claim of the '672 Patent either literally or under the doctrine of equivalents.

151.    Kroger's infringing activities are and have been without authority or license under the '672 Patent.

152.    As a direct and proximate result of Kroger's infringement of the '672 Patent, Alpha Modus has suffered and will continue to suffer damage.

153.    Alpha Modus is informed and believes, and on that basis alleges, that Kroger has been aware of the '672 Patent and its infringement thereof due to the fact that Kroger was sued in January of 2024 for infringement of some of the same patents asserted in this case, including the '672 Patent, due to its implementation of Cooler Screens technology. Despite this knowledge, Kroger has continued to make, use, sell, and offer for sale the Accused Products.

154.    Alpha Modus is informed and believes that Kroger knew or was willfully blind to the patented technology of the '672 Patent. Despite this knowledge or willful blindness, Kroger has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

155.    Alpha Modus is informed and believes that Kroger has made no efforts to avoid infringement of the '672 Patent, despite its knowledge and understanding that its products and systems infringe the '672 Patent.

156.    Therefore, Kroger's infringement of the '672 Patent is willful and egregious, warranting an enhancement of damages.

157.    As such, Kroger has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '672 Patent, justifying an award to Alpha

Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT IV

## (INDUCED PATENT INFRINGEMENT OF THE '672 PATENT)

158.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

159.    Kroger is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '672 Patent , at least as early as January of 2024, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '672 Patent.

160.    Kroger has implemented and utilized the Accused Products in its stores, which practice the patented methods of the '672 Patent.

161.    Kroger's use of the Accused Products demonstrates specific intent to induce infringement of the '672 Patent. Kroger encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '672 Patent.

162.    As detailed above, Kroger was sued by Alpha Modus for infringing a subset of the Asserted Patents in January of 2024, including the '672 Patent, due to its implementation of Cooler Screens technology. During the course of this first lawsuit Kroger obviously became aware of Alpha Modus's patents and the technology covered by such patents.

163.    Kroger's actions and the manner in which the Accused Products are used in Kroger's stores, consistent with Kroger's instructions, demonstrate Kroger's specific intent to induce infringement of the '672 Patent.

164.    Alpha Modus is informed and believes, and on that basis alleges, that Kroger knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to

infringe by practicing, either themselves, or in conjunction with its customers, one or more claims of the '672 Patent.

165.    As a direct and proximate result of Kroger's induced infringement of the '672 Patent, Alpha Modus has suffered and will continue to suffer damage.

166.    Alpha Modus is entitled to recover from Kroger compensation in the form of monetary damages suffered as a result of Kroger's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT V

## (DIRECT INFRINGEMENT OF THE '890 PATENT)

167.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

168.    Kroger has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '890 Patent, including the Accused Products.

169.    The Accused Products embody a method for customer assistance in a retail store as claimed in the '890 Patent.

170.    The Accused Products include the use of one or more information monitoring devices to gather information about a person at a retail store, in line with claim 1 of the '890 Patent.

171.    The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and perform functions such as gathering object identification information of a product and gathering sentiment information of the person with respect to the product.

172.    The Accused Products analyze the information in real time and provide a response based upon the analyzed information gathered by the information monitoring devices, including

but not limited to directing a person to a product location, engaging the person based on the product, providing marketing or advertising information, and offering coupons.

173.    Kroger has directly infringed the '890 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '890 Patent.

174.    The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

175.    Kroger's infringing activities are and have been without authority or license under the '890 Patent.

176.    As a direct and proximate result of Kroger's infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

177.    Alpha Modus is informed and believes, and on that basis alleges, that Kroger has been aware of the '890 Patent and its infringement thereof due to the fact that Kroger was sued in January of 2024 for infringement of some of the same patents asserted in this case, including the '890 Patent, due to its implementation of Cooler Screens technology. Despite this knowledge, Kroger has continued to make, use, sell, and offer for sale the Accused Products.

178.    Alpha Modus is informed and believes that Kroger knew or was willfully blind to the patented technology of the '890 Patent. Despite this knowledge or willful blindness, Kroger has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

179.    Alpha Modus is informed and believes that Kroger has made no efforts to avoid infringement of the '890 Patent, despite its knowledge and understanding that its products and systems infringe the '890 Patent.

180.    Therefore, Kroger's infringement of the '890 Patent is willful and egregious, warranting an enhancement of damages.

181.    As such, Kroger has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '890 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VI

### (INDUCED PATENT INFRINGEMENT OF THE '890 PATENT)

182.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

183.    Kroger is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '890 Patent, at least as early as January of 2024, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '890 Patent.

184.    Kroger has implemented and utilized the Accused Products in its stores, which practice the patented methods of the '890 Patent.

185.    Kroger's use of the Accused Products demonstrates specific intent to induce infringement of the '890 Patent. Kroger encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '890 Patent.

186.    As detailed above, Kroger was sued by Alpha Modus for infringing a subset of the Asserted Patents in January of 2024, including the '890 Patent, due to its implementation of Cooler Screens technology. During the course of this first lawsuit Kroger obviously became aware of Alpha Modus's patents and the technology covered by such patents.

187.    Kroger's actions and the manner in which the Accused Products are used in Kroger's stores, consistent with Kroger's instructions, demonstrate Kroger's specific intent to induce infringement of the '890 Patent.

188.    Alpha Modus is informed and believes, and on that basis alleges, that Kroger knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves, or in conjunction with its customers, one or more claims of the '890 Patent.

189.    As a direct and proximate result of Kroger's induced infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

190.    Alpha Modus is entitled to recover from Kroger compensation in the form of monetary damages suffered as a result of Kroger's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT VII

## (DIRECT PATENT INFRINGEMENT OF THE '880 PATENT)

191.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

192.    Kroger has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '880 Patent, including the Accused Products.

193.    The Accused Products embody a method for customer assistance in a retail store as claimed in the '880 Patent.

194.    The Accused Products include the use of one or more information monitoring devices to gather information about the shopping activities of persons at a retail store, in line with claim 1 of the '880 Patent.

195.     Kroger's retail stores include a plurality of products stocked within the stores.

196.     The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and include video image devices.

197.     The Accused Products perform functions such as gathering product interaction information of the person with respect to the products that the person interacts with and gathering object identification information for the products that the persons interacted with during the product interactions.

198.     The Accused Products analyze the information in real time and provide a response based upon the analyzed information gathered by the information monitoring devices, including but not limited to sending a communication to a retail person regarding the inventory of the products interacted with.

199.     Kroger has directly infringed the '880 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '880 Patent.

200.     The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

201.     Kroger's infringing activities are and have been without authority or license under the '880 Patent.

202.     As a direct and proximate result of Kroger's infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

203.     Alpha Modus is informed and believes, and on that basis alleges, that Kroger has been aware of the '880 Patent and its infringement thereof due to the fact that Kroger was sued in January of 2024 for infringement of some of the same patents asserted in this case due to its

implementation of Cooler Screens technology. Despite this knowledge, Kroger has continued to make, use, sell, and offer for sale the Accused Products.

204.    Alpha Modus is informed and believes that Kroger knew or was willfully blind to the patented technology of the '880 Patent. Despite this knowledge or willful blindness, Kroger has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

205.    Alpha Modus is informed and believes that Kroger has made no efforts to avoid infringement of the '880 Patent, despite its knowledge and understanding that its products and systems infringe the '880 Patent.

206.    Therefore, Kroger's infringement of the '880 Patent is willful and egregious, warranting an enhancement of damages.

207.    As such, Kroger has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '880 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VIII

## (INDUCED PATENT INFRINGEMENT OF THE '880 PATENT)

208.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

209.    Kroger is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '880 Patent , at least as early as January of 2024, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '880 Patent.

210.    Kroger has implemented and utilized the Accused Products in its stores, which practice the patented methods of the '880 Patent.

211.    Kroger's use of the Accused Products demonstrates specific intent to induce infringement of the '880 Patent. Kroger encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '880 Patent.

212.    As detailed above, Kroger was sued by Alpha Modus for infringing a subset of the Asserted Patents in January of 2024 due to its implementation of Cooler Screens technology. During the course of this first lawsuit Kroger obviously became aware of Alpha Modus's patents and the technology covered by such patents.

213.    Kroger's actions and the manner in which the Accused Products are used in Kroger's stores, consistent with Kroger's instructions, demonstrate Kroger's specific intent to induce infringement of the '880 Patent.

214.    Alpha Modus is informed and believes, and on that basis alleges, that Kroger knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves, or in conjunction with its customers, one or more claims of the '890 Patent.

215.    As a direct and proximate result of Kroger's induced infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

216.    Alpha Modus is entitled to recover from Kroger compensation in the form of monetary damages suffered as a result of Kroger's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT IX

## (DIRECT INFRINGEMENT OF THE '120 PATENT)

217.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

218.    Kroger has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '120 Patent, including the digital smart carts of the Accused Products.

219.    The Accused Products embody a method for gathering information about shopping activities of a plurality of consumer utilizing the smart cart Accused Products at a retail store in a retail store setting, as claimed in the '120 Patent.

220.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '120 Patent.

221.    The functions implemented by the Accused Products include gathering traffic information of the shoppers within the retail store, including movement of the shopper; gathering product interaction information of the products that the shopper interacts with in the store; and identifying the products that the shopper interacts with.

222.    The Accused Products generate layout information about the retail store and use the information gathered by the system in order to make recommendations to improve the layout of products in the store.

223.    Kroger has directly infringed the '120 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '120 Patent.

224. The Accused Products satisfy each and every element of the asserted claim of the '120 Patent either literally or under the doctrine of equivalents.

225. Kroger's infringing activities are and have been without authority or license under the '120 Patent.

226. As a direct and proximate result of Kroger's infringement of the '120 Patent, Alpha Modus has suffered and will continue to suffer damage.

227. Alpha Modus is informed and believes, and on that basis alleges, that Kroger has been aware of the '120 Patent and its infringement thereof due to the fact that Kroger was sued in January of 2024 for infringement of some of the same patents asserted in this case due to its implementation of Cooler Screens technology. Despite this knowledge, Kroger has continued to make, use, sell, and offer for sale the Accused Products.

228. Alpha Modus is informed and believes that Kroger knew or was willfully blind to the patented technology of the '120 Patent. Despite this knowledge or willful blindness, Kroger has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

229. Alpha Modus is informed and believes that Kroger has made no efforts to avoid infringement of the '120 Patent, despite its knowledge and understanding that its products and systems infringe the '120 Patent.

230. Therefore, Kroger's infringement of the '120 Patent is willful and egregious, warranting an enhancement of damages.

231. As such, Kroger has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '120 Patent, justifying an award to Alpha

Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT X

### (INDUCED PATENT INFRINGEMENT OF THE '120 PATENT)

232.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

233.    Kroger is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '120 Patent, at least as early as January of 2024, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '120 Patent.

234.    Kroger has implemented and utilized the Accused Products in its stores, which practice the patented methods of the '120 Patent.

235.    Kroger's use of the Accused Products demonstrates specific intent to induce infringement of the '120 Patent. Kroger encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '120 Patent.

236.    As detailed above, Kroger was sued by Alpha Modus for infringing a subset of the Asserted Patents in January of 2024, including the '571 Patent, due to its implementation of Cooler Screens technology. During the course of this first lawsuit Kroger obviously became aware of Alpha Modus's patents and the technology covered by such patents..

237.    Kroger's actions and the manner in which the Accused Products are used in Kroger's stores, consistent with Kroger's instructions, demonstrate Kroger's specific intent to induce infringement of the '120 Patent.

238.    Alpha Modus is informed and believes, and on that basis alleges, that Kroger knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to

infringe by practicing, either themselves or in conjunction with Kroger, one or more claims of the '120 Patent.

239.    As a direct and proximate result of Kroger's induced infringement of the '120 Patent, Alpha Modus has suffered and will continue to suffer damage.

240.    Alpha Modus is entitled to recover from Kroger compensation in the form of monetary damages suffered as a result of Kroger's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT XI

## (DIRECT INFRINGEMENT OF THE '731 PATENT)

241.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

242.    Kroger has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '731 Patent, including Kroger Precision Marketing ("KPM"), 84.51° data analytics, and the associated in-store and digital marketing platforms of the Accused Products.

243.    The Accused Products embody a method for obtaining an information analysis of the shopping activities of consumers, for tracking the location of consumers using information monitoring devices, and for providing product communications and store location information based on such analyses, as claimed in the '731 Patent.

244.    The Accused Products utilize servers comprising one or more processors, and server-based databases and applications storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '731 Patent.

245.    The functions implemented by the Accused Products include analyzing gathered product interaction information from consumer shopping activities, tracking the consumer's location relative to retail stores, and generating real-time communications including store-specific promotions, coupons, advertising, and purchase options.

246.    The Accused Products allow Kroger to provide targeted communications to consumers, including coupons, marketing messages, and purchase options such as pickup, delivery, and reduced-price offers during limited promotional periods, all in accordance with the claimed inventions of the '731 Patent.

247.    Kroger has directly infringed the '731 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '731 Patent.

248.    The Accused Products satisfy each and every element of the asserted claim of the '731 Patent either literally or under the doctrine of equivalents.

249.    Kroger's infringing activities are and have been without authority or license under the '731 Patent.

250.    As a direct and proximate result of Kroger's infringement of the '731 Patent, Alpha Modus has suffered and will continue to suffer damage.

251.    Alpha Modus is informed and believes, and on that basis alleges, that Kroger has been aware of the '731 Patent and its infringement thereof due to the fact that Kroger was sued in January of 2024 for infringement of some of the same patents asserted in this case due to its implementation of Cooler Screens technology. Despite this knowledge, Kroger has continued to make, use, sell, and offer for sale the Accused Products.

252. Alpha Modus is informed and believes that Kroger knew or was willfully blind to the patented technology of the '731 Patent. Despite this knowledge or willful blindness, Kroger has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

253. Alpha Modus is informed and believes that Kroger has made no efforts to avoid infringement of the '731 Patent, despite its knowledge and understanding that its products and systems infringe the '731 Patent.

254. Therefore, Kroger's infringement of the '731 Patent is willful and egregious, warranting an enhancement of damages.

255. As such, Kroger has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '731 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XII

## (INDUCED PATENT INFRINGEMENT OF THE '731 PATENT)

256. Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

257. Kroger is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '731 Patent, at least as early as the January of 2024, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '731 Patent.

258. As detailed above, Kroger was sued by Alpha Modus for infringing a subset of the Asserted Patents in January of 2024 due to its implementation of Cooler Screens technology.

During the course of this first lawsuit Kroger obviously became aware of Alpha Modus's patents and the technology covered by such patents.

259.    Kroger's use of the Accused Products demonstrates specific intent to induce infringement of the '731 Patent. Kroger encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '731 Patent.

260.    Kroger's knowledge of the '731 Patent, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates Kroger's knowledge and intent that the Accused Products be used in a manner that infringes the '731 Patent.

261.    Kroger's actions and the manner in which the Accused Products are used in Kroger's stores, consistent with Kroger's instructions, demonstrate Kroger's specific intent to induce infringement of the '731 Patent.

262.    Alpha Modus is informed and believes, and on that basis alleges, that Kroger knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Kroger, one or more claims of the '731 Patent.

263.    As a direct and proximate result of Kroger's induced infringement of the '731 Patent, Alpha Modus has suffered and will continue to suffer damage.

264.    Alpha Modus is entitled to recover from Kroger compensation in the form of monetary damages suffered as a result of Kroger's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT XIII

## (DIRECT INFRINGEMENT OF THE '121 PATENT)

265.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

266.    Kroger has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '121 Patent, including the Accused Products.

267.    The Accused Products embody a method for gathering information about shopping activities of consumers utilizing the Accused Products at a retail store in a retail store setting, as claimed in the '121 Patent.

268.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '121 Patent.

269.    The functions implemented by the Accused Products include gathering traffic information of the shoppers within the retail store, including movement of the shopper; gathering product interaction information of the products that the shopper interacts with in the store; and identifying the products that the shopper interacts with.

270.    The Accused Products allow the user to make in-cart payments in point-of-sale areas once the consumer has finished shopping, allowing the user to purchase the retained products quickly.

271.    Kroger has directly infringed the '121 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '121 Patent.

272. The Accused Products satisfy each and every element of the asserted claim of the '121 Patent either literally or under the doctrine of equivalents.

273. Kroger's infringing activities are and have been without authority or license under the '121 Patent.

274. As a direct and proximate result of Kroger's infringement of the '121 Patent, Alpha Modus has suffered and will continue to suffer damage.

275. Alpha Modus is informed and believes, and on that basis alleges, that Kroger has been aware of the '121 Patent and its infringement thereof due to the fact that Kroger was sued in January of 2024 for infringement of some of the same patents asserted in this case due to its implementation of Cooler Screens technology. Despite this knowledge, Kroger has continued to make, use, sell, and offer for sale the Accused Products.

276. Alpha Modus is informed and believes that Kroger knew or was willfully blind to the patented technology of the '121 Patent. Despite this knowledge or willful blindness, Kroger has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

277. Alpha Modus is informed and believes that Kroger has made no efforts to avoid infringement of the '121 Patent, despite its knowledge and understanding that its products and systems infringe the '121 Patent.

278. Therefore, Kroger's infringement of the '121 Patent is willful and egregious, warranting an enhancement of damages.

279. As such, Kroger has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '121 Patent, justifying an award to Alpha

Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XIV

## (INDUCED PATENT INFRINGEMENT OF THE '121 PATENT)

280.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

281.    Kroger is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '121 Patent, at least as early as January of 2024, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '121 Patent.

282.    Kroger has implemented and utilized the Accused Products in its stores, which practice the patented methods of the '121 Patent.

283.    Kroger's use of the Accused Products demonstrates specific intent to induce infringement of the '121 Patent. Kroger encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '121 Patent.

284.    As detailed above, Kroger was sued by Alpha Modus for infringing a subset of the Asserted Patents in January of 2024 due to its implementation of Cooler Screens technology. During the course of this first lawsuit Kroger obviously became aware of Alpha Modus's patents and the technology covered by such patents.

285.    Kroger's actions and the manner in which the Accused Products are used in Kroger's stores, consistent with Kroger's instructions, demonstrate Kroger's specific intent to induce infringement of the '121 Patent.

286.    Alpha Modus is informed and believes, and on that basis alleges, that Kroger knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to

infringe by practicing, either themselves or in conjunction with Kroger, one or more claims of the '121 Patent.

287.    As a direct and proximate result of Kroger's induced infringement of the '121 Patent, Alpha Modus has suffered and will continue to suffer damage.

288.    Alpha Modus is entitled to recover from Kroger compensation in the form of monetary damages suffered as a result of Kroger's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT XV

## (DIRECT INFRINGEMENT OF THE '975 APPLICATION)

289.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

290.    Kroger has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '975 Application including the Accused Products.

291.    The Accused Products embody a method for gathering information about shopping activities of consumers utilizing the Accused Products at a retail store, as claimed in at least Claim 27 of the '975 Application.

292.    The Accused Products utilize information monitoring devices, including video image devices and point-of-sale systems, that are operably connected to servers and databases to gather and analyze data on shoppers in real time.

293.    The functions implemented by the Accused Products include gathering product information retained by the shopper while shopping, tracking the shopper to a point-of-sale area, and identifying products being provided for purchase at checkout using video imaging and related monitoring technologies.

294.    The Accused Products generate and maintain lists of products retained and being purchased, compare the lists in real time, and utilize these comparisons to select sales associates for targeted customer engagement.

295.    The Accused Products then send communications to sales associates containing gathered information and real-time analysis, enabling the associate to directly interact with the shopper in the retail store and assist in the purchasing process.

296.    Kroger has directly infringed the '975 Application in violation of 35 U.S.C. § 154(d) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '975 Application.

297.    The Accused Products satisfy each and every element of the asserted claim of the '975 Application either literally or under the doctrine of equivalents.

298.    Kroger's infringing activities are and have been without authority or license under the '975 Application.

299.    As a direct and proximate result of Kroger's infringement of the '975 Application, Alpha Modus has suffered and will continue to suffer damage.

300.    Alpha Modus is informed and believes, and on that basis alleges, that Kroger has been aware of the '975 Application and its infringement thereof due to the fact that Kroger was sued in January of 2024 for infringement of some of the same patents asserted in this case due to its implementation of Cooler Screens technology. Despite this knowledge, Kroger has continued to make, use, sell, and offer for sale the Accused Products.

301.    Alpha Modus is informed and believes that Kroger knew or was willfully blind to the patented technology of the '975 Application. Despite this knowledge or willful blindness,

Kroger has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

302.    Alpha Modus is informed and believes that Kroger has made no efforts to avoid infringement of the '975 Application, despite its knowledge and understanding that its products and systems infringe the '975 Application.

303.    Therefore, Kroger's infringement of the '975 Application is willful and egregious, warranting an enhancement of damages.

304.    As such, Kroger has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '975 Application, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XVI

## (INDUCED PATENT INFRINGEMENT OF THE '975 APPLICATION)

305.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

306.    Kroger is liable for indirect infringement under 35 U.S.C. § 154(d) of at least one claim of the '975 Application, at least as early as publication date of the '975 Application, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '975 Application.

307.    Kroger has implemented and utilized the Accused Products in its stores, which practice the patented methods of the '975 Application.

308.    Kroger's use of the Accused Products demonstrates specific intent to induce infringement of the '975 Application. Kroger encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '975 Application.

309.    As detailed above, Kroger was sued by Alpha Modus for infringing a subset of the Asserted Patents in January of 2024 due to its implementation of Cooler Screens technology. During the course of this first lawsuit Kroger obviously became aware of Alpha Modus's patents and the technology covered by such patents.

310.    Kroger's actions and the manner in which the Accused Products are used in Kroger's stores, consistent with Kroger's instructions, demonstrate Kroger's specific intent to induce infringement of the '975 Application.

311.    Alpha Modus is informed and believes, and on that basis alleges, that Kroger knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Kroger, one or more claims of the '975 Application.

312.    As a direct and proximate result of Kroger's induced infringement of the '975 Application, Alpha Modus has suffered and will continue to suffer damage.

313.    Alpha Modus is entitled to recover from Kroger compensation in the form of monetary damages suffered as a result of Kroger's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## **JURY DEMAND**

Alpha Modus hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## **PRAYER FOR RELIEF**

WHEREFORE, Alpha Modus prays for relief against Kroger as follows:

(A)    An entry of judgment that Kroger has infringed and is directly infringing one or more claims of each of '571 Patent, the '672 Patent, the '890 Patent, the '880 Patent, the '120 Patent, the '731 Patent, the '121 Patent, and the '975 Application;

(B)    An entry of judgment that Kroger has infringed and is indirectly infringing one or more claims of each of the '571 Patent, the '672 Patent, the '890 Patent, the '880 Patent, the '120 Patent, the '731 Patent, the '121 Patent, and the '975 Application;

(C)    An entry of judgment that the '571 Patent, the '672 Patent, the '890 Patent, the '880 Patent, the '120 Patent, the '731 Patent, the '121 Patent, and the '975 Application are valid and enforceable;

(D)    An order pursuant to 35 U.S.C. § 283 permanently enjoining Kroger, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of the '571 Patent, the '672 Patent, the '890 Patent, the '880 Patent, the '120 Patent, the '731 Patent, the '121 Patent, and the '975 Application;

(E)    An order awarding damages sufficient to compensate Alpha Modus for Kroger's infringement of the '571 Patent, the '672 Patent, the '890 Patent, the '880 Patent, the '120 Patent, the '731 Patent, the '121 Patent, and the '975 Application, but in no event less than a reasonable royalty, together with interest and costs;

(F)    A determination that damages against Kroger are available under 35 U.S.C. § 154(d);

(G)    A determination that Kroger's infringement has been willful, wanton, deliberate, and egregious;

(H)    A determination that the damages against Kroger be trebled or for any other basis within the Court's discretion pursuant to 35 U.S.C. § 284;

(I)    A finding that this case against Kroger is "exceptional" and an award to Alpha Modus of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

(J)    An accounting of all infringing sales and revenues of Kroger, together with post judgment interest and prejudgment interest from the first date of infringement of the '571 Patent, the '672 Patent, the '890 Patent, the '880 Patent, the '120 Patent, the '731 Patent, the '121 Patent, and the '975 Application; and

(K)    Such further and other relief as the Court may deem proper and just.


Dated: August 29, 2025                    Respectfully submitted,

                                          */s/ Christopher E. Hanba*
                                          Christopher E. Hanba
                                          Texas Bar No. 24121391
                                          chanba@princelobel.com
                                          Joshua G. Jones
                                          Texas Bar No. 24065517
                                          jjones@princelobel.com
                                          Ariana D. Pellegrino
                                          Michigan Bar No. P79104
                                          apellegrino@princelobel.com

                                          PRINCE LOBEL TYPE LLP
                                          500 W. 2nd Street, Suite 1900
                                          Austin, Texas 78701
                                          Tel: (617) 456-8000

                                          *Attorneys for Plaintiff Alpha Modus, Corp.*