# EXHIBIT G

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

**INVALIDITY CLAIM CHART**

**Reference:** The eyeQ Prior Art (including, for example, the eyeQ Business Plan (AlphaModus0529552-69), the eyeQ February 2012 TVL Presentation (https://vimeo.com/37699348) (AM0546225; VIMEO 0001), and/or the NVC Business Plan (AlphaModus0529253-70)) anticipates and/or renders obvious, including under Plaintiff's apparent infringement theory,[1] all asserted claims[2] of U.S. Patent No. 10,360,571 (the "'571 patent") under 35 U.S.C. §§ 102 and/or 103.

The chart below provides representative examples of where each element of each claim is found within the prior art, including under Plaintiff's apparent construction of the asserted claims (and to the extent the claims are not found indefinite under 35 U.S.C. § 112). The cited evidence is merely illustrative, and Defendants reserve the right to cite alternative or additional evidence. To the extent Plaintiff contends that this prior art does not disclose any asserted claims or claim elements of this asserted patent, it would have been obvious to combine the teachings of the eyeQ Prior Art with: (1) the knowledge of one of ordinary skill in the art to show all the limitations of the claims and/or (2) the teachings of any of the prior art references set forth in Defendants' other invalidity charts or cover pleading with respect to the one or more limitations. Plaintiff has yet to identify any limitation of the asserted claims that it contends is not fully disclosed by this prior art, either alone or in combination with other prior art cited by Defendants and/or with the knowledge of one of ordinary skill in the art. To the extent Plaintiff makes any such contention in the future, Defendants expressly reserve the right to rebut any such contention, including by identifying additional obviousness combinations.

Fact Discovery is ongoing and Defendants' prior art investigation, including via third party discovery, is therefore not yet complete. Defendants reserve the right to rely upon additional evidence of invalidity obtained in the future as to this prior art or any other prior art printed publication or public use/sales/offers for sale that may anticipate or render obvious one or more asserted claims under 35 U.S.C. §§ 102 and/or 103. Defendants may rely on additional documents and/or things that have not yet been located and/or testimony to support the contentions regarding the eyeQ Prior

[1] To the extent that this document relies on or otherwise embodies particular constructions of terms or phrases in the asserted claims, Defendants are not proposing any such constructions as proper constructions of those terms or phrases. Various positions put forth in this document are predicated on Plaintiff's incorrect and overly broad interpretation of its claims as evidenced by its Complaint. Those positions are not intended to and do not necessarily reflect Defendants' interpretation of the true and proper scope of Plaintiff's claims, and Defendants reserve the right to adopt claim construction positions that differ from or even conflict with various positions put forth in this document.

[2] As used herein, "asserted claims" refers only to those claim(s) identified and pleaded in Plaintiff's Infringement Contentions. Thus, as of the date of this document, "asserted claims" as used herein refers only to claims 1, 2, 4-12, 13, 15-18, 20, 21, 23, 26, 27 of the '571 patent. To the extent Plaintiff later obtains leave to assert any additional claims for this patent, Defendants reserve the right to supplement this response.

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

Art set forth in this chart.

Where the chart below states that prior art "discloses" a limitation, such disclosure may be express, implicit and/or inherent. All emphasis is added unless otherwise indicated.

| U.S. Patent No. 10,360,571 Asserted Claims | Prior Art |
|---|---|
| **[1.PRE]** 1. A method comprising: | Defendants take no position in these Invalidity Contentions on whether the entirety of the preamble of this claim is a limitation. To the extent it is a limitation, EyeQ Prior Art discloses, either expressly or inherently, a method, for example as shown below regarding the method steps of this claim. *See, e.g.*:<br>- eyeQ Business Plan at pp. 5-7 ("eyeQ's flagship product, AtShelf, is a solution integrated at the shelves of retail stores and addresses this problem by focusing on three key areas: Monitoring Consumer Purchase Behavior: eyeQAtShelf will capture consumer behavior using video cameras installed at or nearby a retailer's shelf. This information captured is analyzed using eyeQ's real-time video analytics algorithms. AtShelf will continuously process behavior data for every consumer walking by and interacting with product on the shelf. The information captured includes consumer demographics, the order in which products are selected, time spent with each product, promotions offered, and what product they walked off with. Generating Business Intelligence: eyeQ's analysis software will use the information gathered in the previous step along with certain business criteria set by the retailers to generate the business intelligence. Examples of business criteria could include current product inventory, historical sales, promotions and market analysis. eyeQ's software will use a combination of these inputs to determine, real time, a personalized marketing campaign for the current consumer at the shelf. Influence Consumer Purchase: The personalized marketing campaign based off of data analyzed real-time in the previous step is presented to the consumer at the shelf using digital signage. See Exhibit 4 for an implementation example of AtShelf. This campaign will aid and influence the consumer's purchasing decision. Information displayed may include, but is not limited to, comparisons between products the consumer has reviewed, additional product images, online reviews of products, benefits of purchasing in store, and price comparisons. Additionally, AtShelf will provide real time in-store promotions to the |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

consumer to help close the deal. Our algorithm will determine the best promotion to provide the consumer based on factors generated in the business intelligence and limits set by the retailer. eyeQ will also provide the retailer with real-time pre-configured reports. Our web based interface will allow the retailer to generate real-time individual store, multi-store, or corporate wide dashboards. See Exhibit 5 for a sample retailer report. eyeQAtShelf is a combination of both hardware and software. However, the hardware will leverage existing off-the-shelf products. A video camera, processing unit, standard LCD monitor and a network switch is all the hardware needed. eyeQ.'s software follows the "Software as a Service" (SaaS) model. Our patent-pending methodologies (application 61/622,616) and trade-secret algorithms are what provide us competitive advantage over new entrants. As a result, the value-add of our product is the ability to deliver real-time personalized marketing and promotions to the consumer and detailed reports to the retailer.”);

- eyeQ Business Plan at 14:






110935473

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**




- eyeQ TVL February 2012 Presentation at 5:24-8:45 (similar to above disclosure in eyeQ Business Plan);
- eyeQ TVL February Presentation at 7:15-7:59:

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**







- all evidence cited in connection with the above or below limitations.

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| **[1.A]** (a) using one or more information monitoring devices to gather information about persons in a group of persons at a location, | EyeQ Prior Art discloses, either expressly or inherently, using one or more information monitoring devices (e.g., video cameras) to gather information about persons in a group of persons at a location (at/near a retail product shelf of a retail store (e.g., Home Depot)). *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plan at 5 ("eyeQ AtShelf will capture consumer behavior using **<u>video cameras</u>** installed at or nearby a retailer's shelf. This information captured is analyzed using eyeQ's real-time video analytics algorithms. AtShelf will continuously process behavior data for every consumer walking by and interacting with product on the shelf. The information captured includes consumer demographics, the order in which products are selected, time spent with each product, promotions offered, and what product they walked off with.");<br>- eyeQ Business Plan at 5 ("eyeQ's analysis software will use the information gathered in the previous step along with certain business criteria set by the retailers to generate the business intelligence. Examples of business criteria could include current product inventory, historical sales, promotions and market analysis. eyeQ's software will use a combination of these inputs to determine, real time, a personalized marketing campaign for the current consumer at the shelf.");<br>- eyeQ TVL February 2012 Presentation at 6:30 ("Dedicated **<u>Camera</u>** and **<u>Server</u>**"): |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**




- eyeQ TVL February 2012 Presentation at 7:19-7:30 (collecting demographic information including sex (“FEMALE”), ethnicity (“WHITE”), and approximate age (“30-34”):




- eyeQ TVL February 2012 Presentation at 9:01-9:33 (“Technology is called AVA, and it’s an existing technology. Anonymous video analytics. It takes the video and grabs the consumer demographics;” “Intel”);

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | - eyeQ TVL February 2012 Presentation at 7:19-7:30 (showing view of video camera);<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| **[1.B]** wherein (i) the persons are each in proximity of at least one of the one or more information monitoring devices at the location, | EyeQ Prior Art discloses, either expressly or inherently, that the persons are each in proximity of at least one of the one or more information monitoring devices (e.g., video cameras) at the location (e.g., at the retailer's shelf where the product is located), for example as demonstrated by the persons being within the field of view of the camera. *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plan at 5 ("video cameras installed at or nearby a retailer's shelf"; "continuously process behavior data for every consumer walking by and interacting with product on the shelf");<br>- eyeQ Business Plan at 14: |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | Exhibit 4 – eyeQ AtShelf<br><br>- eyeQ TVL February Presentation at 10:50-10:56 (identifying location of camera near retail shelf);<br>- eyeQ TVL February 2012 Presentation at 7:19-7:30: |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | <br>- eyeQ TVL February 2012 Presentation at 9:01-9:33 ("Technology is called AVA, and it's an existing technology. Anonymous video analytics. It takes the video and grabs the consumer demographics;" "Intel");<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| **[1.C]** wherein (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both, | EyeQ Prior Art discloses, either expressly or inherently, that the one or more information monitoring devices are operably connected to (A) a server (e.g., via a network switch, as needed for interaction between the different eyeQ components over a switch/network), (B) one or more databases (e.g., Oracle, IBM, SAS, and/or SAP database containing marketing materials, "business criteria," "current product inventory, historical sales, promotions and market analysis," "comparisons between products |



110935473

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | the consumer has reviewed, additional product images, online reviews of products, benefits of purchasing in store, and price comparisons," "algorithm," etc.), or (C) both. For example, the eyeQ server and/or software running thereon does the real time analysis and carries out the "algorithm." *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plan at 5 ("eyeQ's analysis software will use the information gathered in the previous step along with certain **<u>business criteria</u>** set by the retailers to generate the business intelligence. Examples of business criteria could include current product inventory, historical sales, promotions and market analysis.");<br>- eyeQ Business Plant at 6 ("Influence Consumer Purchase: The personalized marketing campaign based off of data analyzed real-time in the previous step is presented to the consumer at the shelf using digital signage. See Exhibit 4 for an implementation example of AtShelf. This campaign will aid and influence the consumer's purchasing decision. Information displayed may include, but is not limited to, **<u>comparisons between products the consumer has reviewed, additional product images, online reviews of products, benefits of purchasing in store, and price comparisons</u>**. Additionally, AtShelf will provide real time in-store promotions to the consumer to help close the deal. Our **<u>algorithm</u>** will determine the best promotion to provide the consumer based on factors generated in the business intelligence and limits set by the retailer.");<br>- eyeQ Business Plan at 6 ("However, the hardware will leverage existing off-the-shelf products. A **<u>video camera, processing unit, standard LCD monitor and a network switch</u>** is all the hardware needed. eyeQ.'s software follows the "Software as a Service" (SaaS) model. Our patent-pending methodologies (application 61/622,616) and trade-secret algorithms are what provide us competitive advantage over new entrants. As a result, the value-add of our product is the ability to deliver real-time personalized marketing and promotions to the consumer and detailed reports to the retailer.");<br>- eyeQ Business Plan at 6 ("This offering will also include integration into **<u>Oracle's retail inventory database management system</u>**.");<br>- eyeQ Business Plan at 7 ("integration with **<u>IBM, SAS, and SAP database systems</u>**, and<br>- integration into stores mobile phone applications");<br>- eyeQ TVL February 2012 Presentation at 6:30 ("Dedicated Camera and **<u>Server</u>**"): |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | <br><br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| **[1.D]** (iii) the one or more information monitoring devices comprise one or more video image devices; | EyeQ Prior Art discloses, either expressly or inherently, that the one or more information monitoring devices comprise one or more video image devices (video cameras). *See*, *e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plan at 5 ("**video cameras** installed at or nearby a retailer's shelf");<br>- eyeQ TVL February 2012 Presentation at 7:19-7:30 (video feed from video camera at the location/retail shelf): |



110935473

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | <br><br>- eyeQ TVL February 2012 Presentation at 6:30 ("Dedicated **Camera** and **Server**"):<br><br><br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations. |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| **[1.E]** (iv) the step of gathering information using the one or more information monitoring devices comprises gathering a demographic characteristic of the persons in the group of persons using the one or more video image devices, wherein the demographic characteristic is selected from a group consisting of gender of the persons, approximate age of the persons, and combinations thereof, | EyeQ Prior Art discloses, either expressly or inherently, that the step of gathering information using the one or more information monitoring devices comprises gathering a demographic characteristic of the persons in the group of persons using the one or more video image devices, wherein the demographic characteristic is selected from a group consisting of gender (e.g., "FEMALE") of the persons, approximate age (e.g., "30-34") of the persons, and combinations thereof. *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plan at 5 ("The information captured includes consumer demographics");<br>- eyeQ TVL February 2012 Presentation at 7:19-7:30 (collecting demographic information including sex ("FEMALE"), ethnicity ("WHITE"), and approximate age ("30-34"):<br><br><br>- eyeQ TVL February 2012 Presentation at 9:01-9:33 ("Technology is called AVA, and it's an existing technology. Anonymous video analytics. It takes the video and grabs the consumer |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | demographics;" "Intel"); <br> - all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation; <br> - all evidence cited in connection with the above or below limitations. <br><br> To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| **[1.F]** (v) the step of gathering information using the one or more information monitoring devices comprises gathering a sentiment characteristic of the persons in the group of persons using the one or more video image devices, | EyeQ Prior Art discloses, either expressly or inherently, that the step of gathering information using the one or more information monitoring devices comprises gathering a sentiment characteristic of the persons in the group of persons using the one or more video image devices (e.g., sentiment in the form of interest in a particular product (e.g., Ryobi or DeWalt drill), as evidenced by the person picking up the product, walking off with the product, the order in which the products are selected by the person, time spent with each product by the person). *See, e.g.*, EyeQ Prior Art at: <br> - eyeQ Business Plan at 14: |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

**Exhibit 4 – eyeQ AtShelf**




- eyeQ Business Plan at 5 ("eyeQAtShelf will capture consumer behavior using video cameras installed at or nearby a retailer's shelf. This information captured is analyzed using eyeQ's real-time video analytics algorithms. AtShelf will continuously process **behavior data** for every consumer walking by and **interacting with product on the shelf**. **The information captured includes** consumer demographics, **the order in which products are selected, time spent with each product, promotions offered, and what product they walked off with.**");
- eyeQ TVL February 2012 Presentation at 7:05-7:40 (system recognizing in real time the person's sentiment toward a particular product (e.g., interest in a Ryobi or DeWalt drill as evidenced by the person picking up a Ryobi or DeWalt drill, with the drill being specifically identified (and enclosed within a red box and labeled)):

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**







- eyeQ TVL February 2012 Presentation at 7:25-44 (eyeQ system recognizing that "she picked up a DeWalt drill"; "this is one of the inputs" for eyeQ's personalized marketing);
- eyeQ TVL February 2012 Presentation at 21:50-22:20 (eyeQ identifies which product the person "touch[es]" or picks up, and interprets that as the person's "interest" in the product (i.e., their sentiment regarding the product));
- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | - all evidence cited in connection with the above or below limitations.<br><br>Alternatively, it would have been obvious to modify the eyeQ Prior Art such that the step of gathering information using the one or more information monitoring devices comprises gathering a sentiment characteristic of the persons in the group of persons using the one or more video image devices, because such real-time sentiment tracking was known in the same context of personalized marketing, e.g., from Admitted Prior Art, Burazin, Angell, Tuchman, and/or Lee, and known to be obviously useful to provide more effective, personalized marketing. *See, e.g.*, '571 Patent at 9:53-60; Invalidity Contentions, Exhibits A-3, A-5, A-10, and/or A-12 at Limitation 1.F.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| **[1.G]** (vi) the step of gathering information using the one or more information monitoring devices comprises gathering a tracking characteristic of the persons in the group of persons, wherein the tracking characteristic of the persons is selected from a group consisting of movement of the persons relative to the one more information monitoring devices, eye movement of the persons tracked by the one or more video image devices, and combinations thereof, | EyeQ Prior Art discloses, either expressly or inherently, that the step of gathering information using the one or more information monitoring devices comprises gathering a tracking characteristic of the persons in the group of persons, wherein the tracking characteristic of the persons is selected from a group consisting of movement of the persons relative to the one more information monitoring devices (e.g., presence in and/or movement into the field of view of the camera; position relative to the camera's field of view), eye movement of the persons tracked by the one or more video image devices, and combinations thereof. *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plan at 5 ("AtShelf will continuously process behavior data for every consumer **walking by** and interacting with product on the shelf. The information captured includes consumer demographics, the order in which products are selected, time spent with each product, promotions offered, and what product they walked off with.");<br>- eyeQ Business Plan at 6 ("eyeQ's software will use a combination of these inputs to determine, real time, a personalized marketing campaign for the current consumer at the shelf.");<br>- eyeQ TVL February Presentation at 7:19-7:30 (tracking person and their movement relative to the camera, as demonstrated by the green box tracking the person's movement relative to the |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | camera):     - eyeQ Business Plan at 5 (“eyeQAtShelf will capture consumer behavior using video cameras installed at or nearby a retailer's shelf. This information captured is analyzed using eyeQ's real-time video analytics algorithms. AtShelf will continuously process behavior data for |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | every consumer walking by and interacting with product on the shelf. The information captured includes consumer demographics, the order in which products are selected, time spent with each product, promotions offered, and what product they walked off with.”);<br>- eyeQ Business Plan at 14 (tracking movement of the person relative to the camera, as demonstrated by tracking movement of the person relative to the product (e.g., picking up a product));<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants’ other invalidity charts for this patent with respect to this limitation. |
| **[1.H]** (b) providing an opt-out option to the persons in the group of persons, wherein after receipt of an affirmation of the opt-out option from an opt-out person, the opt-out person is in the subset of the opt-out persons, | EyeQ Prior Art discloses, either expressly or inherently, providing an opt-out option to the persons in the group of persons (e.g., opting out by not entering the store or not walking in view of the camera), wherein after receipt of an affirmation of the opt-out option from an opt-out person, the opt-out person is in the subset of the opt-out persons. *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plan at 5 (providing for opt-out based on the person not “walking by and interacting with product on the shelf”);<br>- eyeQ TVL February Presentation at 7:19-7:30 (limiting data collection to persons in view of camera);<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants’ other invalidity charts for this patent |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | with respect to this limitation. |
| **[1.I]** (c) analyzing in real time using (A) the server, (B) the one or more databases, or (C) both the information gathered by the information monitoring devices of the persons in the group of persons, except for the subset of opt-out persons who have affirmatively opted-out, wherein the analyzed information comprises the demographic characteristic of the persons, the sentiment characteristic of the persons, and the tracking information of the persons; and | EyeQ Prior Art discloses, either expressly or inherently, analyzing in real time using (A) the server (e.g., storing/analyzing camera data, carrying out the algorithm, creating personalized promotions/ads for display), (B) the one or more databases (e.g., containing information about products, promotions, prices, reviews, promotions, comparisons, algorithm), or (C) both the information gathered by the information monitoring devices of the persons in the group of persons, except for the subset of opt-out persons who have affirmatively opted-out (e.g., by not walking in front of the camera), wherein the analyzed information comprises the demographic characteristic of the persons, the sentiment characteristic of the persons, and the tracking information of the persons. *See*, *e.g.*, EyeQ Prior Art at:<br>- evidence cited above in connection with Limitation 1.C;<br>- eyeQ Business Plan at 5 ("AtShelf will continuously process behavior data for **<u>every consumer walking by</u>** and interacting with product on the shelf. The information captured includes consumer demographics, the order in which products are selected, time spent with each product, promotions offered, and what product they walked off with.");<br>- eyeQ Business Plan at 5-6 ("Generating Business Intelligence: eyeQ's analysis software will use the information gathered in the previous step along with certain business criteria set by the retailers to generate the business intelligence. Examples of business criteria could include current product inventory, historical sales, promotions and market analysis. eyeQ's software will use a combination of these inputs to determine, real time, a personalized marketing campaign for the current consumer at the shelf.");<br>- eyeQ Business Plan at 6 ("The personalized marketing campaign based off of data analyzed real-time in the previous step is presented to the consumer at the shelf using digital signage. See Exhibit 4 for an implementation example of AtShelf. This campaign will aid and influence the consumer's purchasing decision. Information displayed may include, but is not limited to, comparisons between products the consumer has reviewed, additional product images, online reviews of products, benefits of purchasing in store, and price comparisons. Additionally, AtShelf will provide real time in-store promotions to the consumer to help close the deal. Our algorithm will determine the best promotion to provide the consumer based on factors generated in the business intelligence and limits set by the retailer."); |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

- eyeQ TVL February 2012 Presentation at 7:05-7:40 (system recognizing in real time the person's sentiment toward a particular product (e.g., interest in a Ryobi or DeWalt drill as evidenced by the person picking up a Ryobi or DeWalt drill, with the drill being specifically identified (and enclosed within a red box and labeled)):







- eyeQ TVL February 2012 Presentation at 7:25-44 (eyeQ system recognizing that "she picked up a DeWalt drill"; identifying sentiment (as demonstrated by product interactions) and demographic information (including approximate age and sex) as "inputs" for eyeQ's

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | personalized marketing);<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| **[1.J]** (d) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of (i) engaging the person based upon the analyzed information of the person, wherein the engaging is performed using one or more displays and content being displayed on the one or more displays is selected based upon the analyzed information, | EyeQ Prior Art discloses, either expressly or inherently, providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of (i) engaging the person based upon the analyzed information of the person, wherein the engaging is performed using one or more displays and content being displayed on the one or more displays is selected based upon the analyzed information. *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plan at 6 ("The personalized marketing campaign based off of data analyzed real-time in the previous step is presented to the consumer at the shelf using digital signage. See Exhibit 4 for an implementation example of AtShelf. This campaign will aid and influence the consumer's purchasing decision. Information displayed may include, but is not limited to, comparisons between products the consumer has reviewed, additional product images, online reviews of products, benefits of purchasing in store, and price comparisons. Additionally, AtShelf will provide real time in-store promotions to the consumer to help close the deal. Our algorithm will determine the best promotion to provide the consumer based on factors generated in the business intelligence and limits set by the retailer.");<br>- eyeQ Business Plan at 14: |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

<table>
<tr>
<td></td>
<td>


- eyeQ TVL February Presentation at 7:15-7:59:</td>
</tr>
</table>



110935473

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| |     - eyeQ TVL February 2012 Presentation at 7:25-58 (eyeQ system recognizing that “she picked up a DeWalt drill”; identifying sentiment (as demonstrated by product interactions) and |



110935473

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | demographic information (including approximate age and sex) as "inputs" for eyeQ's personalized marketing, which is then displayed in real time on a display screen);<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| **[1.K]** (ii) sending a communication to a second person at the location who can then in real time directly interact with the person regarding at least a portion of the analyzed information, | EyeQ Prior Art discloses, either expressly or inherently, sending a communication to a second person (e.g., "sales team" member) at the location who can then in real time directly interact with the person regarding at least a portion of the analyzed information. *See, e.g.*, EyeQ Prior Art at:<br>- EyeQ Business Plan at 3 ("used to determine effectiveness of store layout, inventory management, merchandising, at-shelf promotion, **sales team positioning**, and product feedback to the manufacturer"); *id.* at 4 ("The decisions can include product promotions, placement, inventory levels to carry, **staffing**, and pricing.");<br>- EyeQ Business Plan at 2 ("create at-shelf behavior reports for the retailer");<br>- eyeQ Business Plan at 6, 14 ("eyeQ will also provide the retailer with **real-time pre-configured reports**. Our web based interface will allow the retailer to generate real-time individual store, multi-store, or corporate wide dashboards. See Exhibit 5 for a sample retailer report."): |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| |  <br>- eyeQ TVL February 2012 Presentation at 9:37-10:01 (similar):<br> <br>- all evidence cited above in connection with any limitation providing antecedent basis for any |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| **[1.L]** (iii) providing marketing or advertising information to the person in real time based upon the analyzed information, wherein the marketing or advertising information is either provided to the person by a display at the location or by sending the marketing or advertising information to the mobile device of the person, and | EyeQ Prior Art discloses, either expressly or inherently, providing marketing or advertising information to the person in real time based upon the analyzed information, wherein the marketing or advertising information is either provided to the person by a display at the location (e.g., as shown below in Home Depot examples) or by sending the marketing or advertising information to the mobile device of the person. *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plan at 6 ("The personalized marketing campaign based off of data analyzed real-time in the previous step is presented to the consumer at the shelf using digital signage. See Exhibit 4 for an implementation example of AtShelf. This campaign will aid and influence the consumer's purchasing decision. Information displayed may include, but is not limited to, comparisons between products the consumer has reviewed, additional product images, online reviews of products, benefits of purchasing in store, and price comparisons.");<br>- eyeQ Business Plan at 14: |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| |  <br>- eyeQ TVL February Presentation at 7:15-7:59: |



110935473

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| |     <br>- eyeQ TVL February 2012 Presentation at 7:15-58 (eyeQ system recognizing that “she picked up a DeWalt drill”; identifying sentiment (as demonstrated by product interactions) and |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | demographic information (including approximate age and sex) as "inputs" for eyeQ's personalized marketing, which is then displayed in real time on a display screen);<br>- eyeQ TVL February 2012 Presentation at 26:45-27:15 (eyeQ system recognizes the product being touched by the person in real time ("immediately"); "When the customer essentially puts their hand on the product, it recognizes that a customer has touched the product. It knows what the product is.");<br>- eyeQ Business Plant at 6-7 ("In 2013, we expect to add additional functionality, including at shelf and mobile payment systems, integration with IBM, SAS, and SAP database systems, and integration into stores mobile phone applications.");<br>- NVC Business Plan (AlphaModus0529253-70) at 6 ("eyeQ Mobile: eyeQ Mobile will be an add-on to the retailer's existing mobile application on a consumer's smart phone. eyeQ Mobile will provide the retailer with the ability to capture additional consumer data, allow the user to take the retail shopping experience home with them, and also provide real-time promotion of products while the consumer is within the store.");<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| **[1.M]** (iv) providing a coupon to the person in real time based upon the analyzed information, wherein the coupon is either a printed out coupon or is a digital coupon. | EyeQ Prior Art discloses, either expressly or inherently, providing a coupon to the person in real time based upon the analyzed information, wherein the coupon is either a printed out coupon or is a digital coupon (e.g., "SPECIAL PRICE: Buy in the next 60 minutes for: $94.99 ~~Was $99.00~~"). *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plan at 6 ("The personalized marketing campaign based off of data analyzed real-time in the previous step is presented to the consumer at the shelf using digital signage. See Exhibit 4 for an implementation example of AtShelf. This campaign will aid and influence the consumer's purchasing decision. Information displayed may include, but is not limited to, |



110935473

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | comparisons between products the consumer has reviewed, additional product images, online reviews of products, benefits of purchasing in store, and price comparisons. Additionally, AtShelf will provide **<u>real time in-store promotions</u>** to the consumer to help close the deal.”);<br>- eyeQ Business Plan at 14 (coupon in the form of a “SPECIAL PRICE: Buy in the next 60 minutes for: $94.99 ~~Was $99.00~~”):<br><br><br>- eyeQ TVL February Presentation at 8:20-40 (responsively offering discount/coupon in real time);<br>- eyeQ TVL February Presentation at 10:11 (“SPECIAL PRICE: Buy in the next 60 minutes for: $94.99 ~~Was $99.00~~”): |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**




- NVC Business Plan (AlphaModus0529253-70) at 6-7 ("eyeQ Kiosk: eyeQ Kiosk will be one or more kiosks throughout the store. This will be the consumer's first touch-point in the store. The consumer will interact with this and based on inputs collected a personalized report consisting of a store map with route, complementary products, promotional **coupons** will be provided. See Exhibit 4 for an example kiosk.");
- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;
- all evidence cited in connection with the above or below limitations.

To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | with respect to this limitation. |
| | |
| **[2.A]** 2. The method of claim 1, wherein the server comprises a server located at the location operatively connected to cloud services. | EyeQ Prior Art discloses, either expressly or inherently, that the server comprises a server located at the location operatively connected to cloud services. It would have been obvious to have positioned the server either locally at the retail store or remotely (cloud computing server) because these two locations were known alternatives in the art. *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plan at 6 ("However, the hardware will leverage existing off-the-shelf products. A **video camera, processing unit, standard LCD monitor and a network switch** is all the hardware needed. eyeQ.'s software follows the "Software as a Service" (SaaS) model. Our patent-pending methodologies (application 61/622,616) and trade-secret algorithms are what provide us competitive advantage over new entrants. As a result, the value-add of our product is the ability to deliver real-time personalized marketing and promotions to the consumer and detailed reports to the retailer.");<br>- eyeQ Business Plan at 6 ("This offering will also include integration into **Oracle's retail inventory database management system**.");<br>- eyeQ Business Plan at 7 ("integration with **IBM, SAS, and SAP database systems**, and<br>- integration into stores mobile phone applications");<br>- eyeQ TVL February 2012 Presentation at 6:30 ("Dedicated Camera and **Server**"): |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | <br>- eyeQ TVL February 2012 Presentation at 25:30- (“Every two cameras uses one computer [i.e., server],” which would obviously or inherently have been “located at the location operatively connected to cloud services”);<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants’ other invalidity charts for this patent with respect to this limitation. |
| | |
| **[4.A]** 4. The method of claim 1 further comprising one or more displays operatively connected with the server, wherein the one or more displays engages | EyeQ Prior Art discloses, either expressly or inherently, one or more displays operatively connected with the server, wherein the one or more displays engages persons at the location based upon the information gathered by the one or more information monitoring devices. *See, e.g.*, EyeQ Prior Art at: |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| persons at the location based upon the information gathered by the one or more information monitoring devices. | - eyeQ Business Plan at 6 ("The personalized marketing campaign based off of data analyzed real-time in the previous step is presented to the consumer at the shelf using digital signage. See Exhibit 4 for an implementation example of AtShelf. This campaign will aid and influence the consumer's purchasing decision. Information displayed may include, but is not limited to, comparisons between products the consumer has reviewed, additional product images, online reviews of products, benefits of purchasing in store, and price comparisons. Additionally, AtShelf will provide real time in-store promotions to the consumer to help close the deal. Our algorithm will determine the best promotion to provide the consumer based on factors generated in the business intelligence and limits set by the retailer.");<br>- eyeQ TVL February Presentation at 7:15-7:59:<br><br> |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**




- eyeQ TVL February 2012 Presentation at 7:25-58 (eyeQ system recognizing that "she picked up a DeWalt drill"; identifying sentiment (as demonstrated by product interactions) and demographic information (including approximate age and sex) as "inputs" for eyeQ's personalized marketing, which is then displayed in real time on a display screen);
- eyeQ Business Plan at 6 ("However, the hardware will leverage existing off-the-shelf products. A **video camera, processing unit, standard LCD monitor and a network switch** is all the hardware needed. eyeQ.'s software follows the "Software as a Service" (SaaS) model. Our patent-pending methodologies (application 61/622,616) and trade-secret algorithms are what provide us competitive advantage over new entrants. As a result, the value-add of our product is the ability to deliver real-time personalized marketing and promotions to the consumer and detailed reports to the retailer.");
- eyeQ Business Plan at 6 ("This offering will also include integration into **Oracle's retail inventory database management system**.");

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

<table>
<tr><td></td><td>
- eyeQ Business Plan at 7 (“integration with <u>**IBM, SAS, and SAP database systems**</u>, and
- integration into stores mobile phone applications”);
- eyeQ TVL February 2012 Presentation at 6:30 (“Dedicated Camera and <u>**Server**</u>”):




- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;
- all evidence cited in connection with the above or below limitations.

To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants’ other invalidity charts for this patent with respect to this limitation.
</td></tr>
<tr><td></td><td></td></tr>
<tr><td>**[5.A]** 5. The method of claim 1, wherein the location is a retail store.</td><td>
EyeQ Prior Art discloses, either expressly or inherently, that the location (product shelf at brick-and-mortor retail store) is a retail store (e.g., Home Depot). *See, e.g.*, EyeQ Prior Art at:

- eyeQ TVL February Presentation at 7:09 (product shelf at Home Depot);
</td></tr>
</table>

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | - EyeQ Business Plan at 2 ("create at-shelf behavior reports for the retailer");<br>- eyeQ Business Plan at 6, 14 ("eyeQ will also provide the retailer with real-time pre-configured reports. Our web based interface will allow the retailer to generate real-time individual store, multi-store, or corporate wide dashboards. See Exhibit 5 for a sample retailer report."):<br><br><br>- eyeQ TVL February 2012 Presentation at 9:37-10:01 (similar): |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | <br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| | |
| **[6.A]** 6. The method of claim 5, wherein the step of analyzing comprises analyzing behavior of customers in the retail store in real-time. | EyeQ Prior Art discloses, either expressly or inherently, that the step of analyzing comprises analyzing behavior (e.g., picking up or touching a product, interacting with a product, walking away with a product, time spent with a product) of customers in the retail store (e.g., Home Depot) in real-time. *See, e.g.*, EyeQ Prior Art at: |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | - eyeQ Business Plan at 5 ("Monitoring Consumer Purchase Behavior: eyeQ AtShelf will capture **consumer behavior** using video cameras installed at or nearby a retailer's shelf. This information captured is analyzed using eyeQ's **real-time video analytics algorithms**. AtShelf will **continuously process behavior data for every consumer walking by and interacting with product on the shelf**. The information captured includes consumer demographics, **the order in which products are selected, time spent with each product**, promotions offered, and **what product they walked off with**."); <br> - eyeQ TVL February 2012 Presentation at 7:15-58 (eyeQ system recognizing that "she picked up a DeWalt drill"; identifying sentiment (as demonstrated by product interactions) and demographic information (including approximate age and sex) as "inputs" for eyeQ's personalized marketing, which is then displayed in real time on a display screen); <br> - eyeQ TVL February 2012 Presentation at 21:35-47 ("We analyzed that data **real time**, and we influence the consumer's purchasing decisions as well as provide updated reports to the retail executives."); <br> - all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation; <br> - all evidence cited in connection with the above or below limitations. <br><br> To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| | |
| **[7.A]** 7. The method of claim 6, further comprising one or more displays operatively connected with the server, wherein the one or more displays engages the customers based upon the information gathered by the one or more information | EyeQ Prior Art discloses, either expressly or inherently, one or more displays operatively connected with the server, wherein the one or more displays engages the customers based upon the information gathered by the one or more information monitoring devices. *See, e.g.*, EyeQ Prior Art at: <br> - see above evidence cited in connection with limitations 2.A and 4.A; <br> - all evidence cited above in connection with any limitation providing antecedent basis for any |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| monitoring devices. | term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| | |
| **[8.A]** 8. The method of claim 7, wherein (a) the displays are interactive displays, and (b) the interactive displays are information monitoring devices. | EyeQ Prior Art discloses, either expressly or inherently, that (a) the displays are interactive displays, and (b) the interactive displays are information monitoring devices. For example, the displays are interactive because their displayed content is based on the consumer at the display (e.g., demographics, behavior, product interaction). *See, e.g.*, EyeQ Prior Art at:<br>- see above evidence cited in connection with limitation 6.A;<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. *See, e.g.*, AVA White Paper at 4 ("Kraft Foods and Intel have tested and demonstrated in the United States a retail-focused Meal Planning Solution center that allows shoppers in grocery environments to obtain recipes, shopping suggestions, promotional coupons and product samples in a two-way, immersive setting that layers in technologies such as touch screens, 2-D bar code scanners, and mobile. The digital signage screens use AVA to gather retail intelligence on how many shoppers interacted with the self-serve kiosk and for how long, and provides breakdowns on things such as gender, age, and time of day. AVA gives the Planning Solution |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | immediate feedback on ROI and allows content to be adapted in real time and served based on the audience type watching.”). |
| | |
| **[9.A]** 9. The method of claim 7, wherein the step of analyzing comprises determining what product within the retail store the customer is viewing. | EyeQ Prior Art discloses, either expressly or inherently, that the step of analyzing comprises determining what product (e.g., Ryobi or DeWalt drill) within the retail store (e.g., Home Depot) the customer is viewing (e.g., as demonstrated by the system detecting that the person picked up the identified product (e.g., Ryobi or DeWalt drill) or is within proximity of the product). *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plan at 14:<br>**Exhibit 4 – eyeQ AtShelf**<br><br>- eyeQ Business Plan at 5 (“eyeQAtShelf will capture consumer behavior using video cameras installed at or nearby a retailer's shelf. This information captured is analyzed using eyeQ's real-time video analytics algorithms. AtShelf will continuously process **<u>behavior data</u>** for every consumer walking by and **<u>interacting with product on the shelf</u>**. **<u>The information</u>** |



110935473

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | **captured includes** consumer demographics, **the order in which products are selected, time spent with each product, promotions offered, and what product they walked off with.**”);<br>- eyeQ TVL February 2012 Presentation at 7:05-7:40 (system recognizing in real time the person’s sentiment toward a particular product (e.g., interest in a Ryobi or DeWalt drill as evidenced by the person picking up a Ryobi or DeWalt drill, with the drill being specifically identified (and enclosed within a red box and labeled)):<br><br><br><br><br>- eyeQ TVL February 2012 Presentation at 7:25-44 (eyeQ system recognizing that “she picked up |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | a DeWalt drill"; "this is one of the inputs" for eyeQ's personalized marketing);<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| | |
| **[10.A]** 10. The method of claim 7, wherein the one or more displays provide information to the customer based upon the information gathered by the one or more information monitoring devices. | EyeQ Prior Art discloses, either expressly or inherently, that the one or more displays provide information to the customer based upon the information gathered by the one or more information monitoring devices. *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plan at pp. 5-7 ("eyeQ's flagship product, AtShelf, is a solution integrated at the shelves of retail stores and addresses this problem by focusing on three key areas: Monitoring Consumer Purchase Behavior: eyeQAtShelf will capture consumer behavior using video cameras installed at or nearby a retailer's shelf. This information captured is analyzed using eyeQ's real-time video analytics algorithms. AtShelf will continuously process behavior data for every consumer walking by and interacting with product on the shelf. The information captured includes consumer demographics, the order in which products are selected, time spent with each product, promotions offered, and what product they walked off with. Generating Business Intelligence: eyeQ's analysis software will use the information gathered in the previous step along with certain business criteria set by the retailers to generate the business intelligence. Examples of business criteria could include current product inventory, historical sales, promotions and market analysis. eyeQ's software will use a combination of these inputs to determine, real time, a personalized marketing campaign for the current consumer at the shelf. Influence Consumer Purchase: The personalized marketing campaign |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | based off of data analyzed real-time in the previous step is presented to the consumer at the shelf using digital signage. See Exhibit 4 for an implementation example of AtShelf. This campaign will aid and influence the consumer's purchasing decision. Information displayed may include, but is not limited to, comparisons between products the consumer has reviewed, additional product images, online reviews of products, benefits of purchasing in store, and price comparisons. Additionally, AtShelf will provide real time in-store promotions to the consumer to help close the deal. Our algorithm will determine the best promotion to provide the consumer based on factors generated in the business intelligence and limits set by the retailer. eyeQ will also provide the retailer with real-time pre-configured reports. Our web based interface will allow the retailer to generate real-time individual store, multi-store, or corporate wide dashboards. See Exhibit 5 for a sample retailer report. eyeQAtShelf is a combination of both hardware and software. However, the hardware will leverage existing off-the-shelf products. A video camera, processing unit, standard LCD monitor and a network switch is all the hardware needed. eyeQ.'s software follows the "Software as a Service" (SaaS) model. Our patent-pending methodologies (application 61/622,616) and trade-secret algorithms are what provide us competitive advantage over new entrants. As a result, the value-add of our product is the ability to deliver real-time personalized marketing and promotions to the consumer and detailed reports to the retailer.”);<br>- eyeQ Business Plan at 14: |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | <br>- eyeQ TVL February 2012 Presentation at 7:25-44 (eyeQ system recognizing that “she picked up a DeWalt drill”; “this is one of the inputs” for eyeQ’s personalized marketing that is then displayed on the display device at the location);<br>- eyeQ TVL February Presentation at 7:15-7:59: |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | <br>- <br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| | |
| **[11.A]** 11. The method of claim 6, wherein the step of analyzing recognizes repeat customers of the retail store. | EyeQ Prior Art discloses, either expressly or inherently, that the step of analyzing recognizes repeat customers of the retail store. *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plant at 6-7 ("In 2013, we expect to add additional functionality, including at shelf and mobile payment systems, integration with IBM, SAS, and SAP database systems, and integration into stores mobile phone applications."); |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | - all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| | |
| **[12.A]** 12. The method of claim 6, wherein the method further comprises generating a report based upon the analyzed behavior of the customers. | EyeQ Prior Art discloses, either expressly or inherently, that the method further comprises generating a report based upon the analyzed behavior of the customers. *See, e.g.*, EyeQ Prior Art at:<br>- EyeQ Business Plan at 2 ("create at-shelf behavior reports for the retailer");<br>- eyeQ Business Plan at 6, 14 ("eyeQ will also provide the retailer with real-time pre-configured reports. Our web based interface will allow the retailer to generate real-time individual store, multi-store, or corporate wide dashboards. See Exhibit 5 for a sample retailer report."): |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**




- eyeQ TVL February 2012 Presentation at 9:37-10:01 (similar):




- all evidence cited above in connection with any limitation providing antecedent basis for any

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| | |
| **[13.A]** 13. The method of claim 6, wherein the method further comprises registering the customer to a loyalty program, wherein the registration comprises information of the customer that is used to analyze behavior. | EyeQ Prior Art discloses, either expressly or inherently, that the method further comprises registering the customer to a loyalty program, wherein the registration comprises information of the customer that is used to analyze behavior. *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plant at 6-7 ("In 2013, we expect to add additional functionality, including at shelf and mobile payment systems, integration with IBM, SAS, and SAP database systems, and integration into stores mobile phone applications.");<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| | |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| **[15.A]** 15. The method of claim 6 further comprising sending a communication to an employee of the retail store to signal the employee to interact with the customer based upon the analyzed behavior of the customer. | EyeQ Prior Art discloses, either expressly or inherently, sending a communication to an employee of the retail store to signal the employee to interact with the customer based upon the analyzed behavior of the customer. *See*, *e.g.*, EyeQ Prior Art at:<br>- see above evidence in connection with limitation 1.K;<br>- EyeQ Business Plan at 3 ("used to determine effectiveness of store layout, inventory management, merchandising, at-shelf promotion, **<u>sales team positioning</u>**, and product feedback to the manufacturer"); *id.* at 4 ("The decisions can include product promotions, placement, inventory levels to carry, **<u>staffing</u>**, and pricing.");<br>- EyeQ Business Plan at 2 ("create at-shelf behavior reports for the retailer");<br>- eyeQ Business Plan at 6, 14 ("eyeQ will also provide the retailer with real-time pre-configured reports. Our web based interface will allow the retailer to generate real-time individual store, multi-store, or corporate wide dashboards. See Exhibit 5 for a sample retailer report."):<br>Exhibit 5 – Sample Retailer Dashboard<br><br><br>- eyeQ TVL February 2012 Presentation at 9:37-10:01 (similar):<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations. |



110935473

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| | |
| **[16.A]** 16. The method of claim 15, wherein the communication comprises an identification of a product being sought by the customer and materials about such product. | EyeQ Prior Art discloses, either expressly or inherently, that the communication comprises an identification of a product being sought by the customer and materials about such product. *See, e.g.*, EyeQ Prior Art at:<br>- see above evidence in connection with limitations 1.K and 15.A;<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| | |
| **[17.A]** 17. The method of claim 6 further comprising providing marketing and advertising messages to the customer based upon the information gathered by the one or more information monitoring devices. | EyeQ Prior Art discloses, either expressly or inherently, providing marketing and advertising messages to the customer based upon the information gathered by the one or more information monitoring devices. *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plan at 6 ("The personalized marketing campaign based off of data analyzed real-time in the previous step is presented to the consumer at the shelf using digital signage. See Exhibit 4 for an implementation example of AtShelf. This campaign will aid and influence the consumer's purchasing decision. Information displayed may include, but is not limited to, |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | comparisons between products the consumer has reviewed, additional product images, online reviews of products, benefits of purchasing in store, and price comparisons. Additionally, AtShelf will provide real time in-store promotions to the consumer to help close the deal. Our algorithm will determine the best promotion to provide the consumer based on factors generated in the business intelligence and limits set by the retailer.”);<br>- eyeQ TVL February Presentation at 7:15-7:59:<br> |



110935473

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**




- eyeQ TVL February 2012 Presentation at 7:25-58 (eyeQ system recognizing that “she picked up a DeWalt drill”; identifying sentiment (as demonstrated by product interactions) and demographic information (including approximate age and sex) as “inputs” for eyeQ’s personalized marketing, which is then displayed in real time on a display screen);
- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;
- all evidence cited in connection with the above or below limitations.

To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants’ other invalidity charts for this patent with respect to this limitation.

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| **[18.A]** 18. The method of claim 6, wherein the information monitoring devices are selected from a group consisting of computing devices, user input and output devices, displays, POS devices, cameras, sensors; WIFI devices; in-store customer devices; output devices; system for communicating to user devices, and kiosks. | EyeQ Prior Art discloses, either expressly or inherently, that the information monitoring devices are selected from a group consisting of computing devices, user input and output devices (e.g., smart phone), displays, POS devices, cameras ("video camera[s]"), sensors; WIFI devices; in-store customer devices; output devices (display; "monitor"; "digital signage"); system for communicating to user devices, and kiosks. *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plan at 6 ("However, the hardware will leverage existing off-the-shelf products. A **video camera, processing unit, standard LCD monitor and a network switch** is all the hardware needed. eyeQ.'s software follows the "Software as a Service" (SaaS) model. Our patent-pending methodologies (application 61/622,616) and trade-secret algorithms are what provide us competitive advantage over new entrants. As a result, the value-add of our product is the ability to deliver real-time personalized marketing and promotions to the consumer and detailed reports to the retailer.");<br>- eyeQ Business Plan at 6, 14 ("The personalized marketing campaign based off of data analyzed real-time in the previous step is presented to the consumer at the shelf using **digital signage**. See Exhibit 4 for an implementation example of AtShelf."): |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

Exhibit 4 – eyeQ AtShelf



- eyeQ TVL February 2012 Presentation at 6:30 ("Dedicated Camera and **<u>Server</u>**"):




- eyeQ TVL February Presentation at 7:15-7:59:



110935473

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**







- eyeQ TVL February 2012 Presentation at 7:25-58 (eyeQ system recognizing that “she picked up a DeWalt drill”; identifying sentiment (as demonstrated by product interactions) and

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | demographic information (including approximate age and sex) as "inputs" for eyeQ's personalized marketing, which is then displayed in real time on a display screen);<br>- NVC Business Plan (AlphaModus0529253-70) at 6-7 ("eyeQ Kiosk: eyeQ **Kiosk** will be one or more kiosks throughout the store. This will be the consumer's first touch-point in the store. The consumer will interact with this and based on inputs collected a personalized report consisting of a store map with route, complementary products, promotional coupons will be provided. See Exhibit 4 for an example kiosk.");<br>- NVC Business Plan (AlphaModus0529253-70) at 7 ("eyeQ Mobile: eyeQ Mobile will be an add-on to the retailer's existing mobile application on a consumer's smart phone. eyeQ Mobile will provide the retailer with the ability to capture additional consumer data, allow the user to take the retail shopping experience home with them, and also provide real-time promotion of products while the consumer is within the store.");<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| | |
| **[20.PRE]** 20. A method comprising: | *See* identical limitation 1.PRE above. |
| **[20.A]** (a) initiating an marketing campaign at a location directed to persons having a particular demographic characteristic, wherein the particular | EyeQ Prior Art discloses, either expressly or inherently, (a) initiating an marketing campaign at a location directed to persons having a particular demographic characteristic, wherein the particular demographic characteristic is selected from a group consisting of a particular gender, a particular approximate age, and combinations thereof. *See, e.g.*, EyeQ Prior Art at: |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| demographic characteristic is selected from a group consisting of a particular gender, a particular approximate age, and combinations thereof, | - eyeQ Business Plan at pp. 5-7 ("eyeQ's flagship product, AtShelf, is a solution integrated at the shelves of retail stores and addresses this problem by focusing on three key areas: Monitoring Consumer Purchase Behavior: eyeQAtShelf will capture consumer behavior using video cameras installed at or nearby a retailer's shelf. This information captured is analyzed using eyeQ's real-time video analytics algorithms. AtShelf will continuously process behavior data for every consumer walking by and interacting with product on the shelf. The information captured includes consumer **demographics**, the order in which products are selected, time spent with each product, promotions offered, and what product they walked off with. Generating Business Intelligence: eyeQ's analysis software will use the information gathered in the previous step along with certain business criteria set by the retailers to generate the business intelligence. Examples of business criteria could include current product inventory, historical sales, promotions and market analysis. **eyeQ's software will use a combination of these inputs to determine, real time, a personalized marketing campaign for the current consumer at the shelf**. Influence Consumer Purchase: **The personalized marketing campaign based off of data analyzed real-time in the previous step is presented to the consumer at the shelf using digital signage**. See Exhibit 4 for an implementation example of AtShelf. This campaign will aid and influence the consumer's purchasing decision. Information displayed may include, but is not limited to, comparisons between products the consumer has reviewed, additional product images, online reviews of products, benefits of purchasing in store, and price comparisons. Additionally, AtShelf will provide real time in-store promotions to the consumer to help close the deal. Our algorithm will determine the best promotion to provide the consumer based on factors generated in the business intelligence and limits set by the retailer. eyeQ will also provide the retailer with real-time pre-configured reports. Our web based interface will allow the retailer to generate real-time individual store, multi-store, or corporate wide dashboards. See Exhibit 5 for a sample retailer report. eyeQAtShelf is a combination of both hardware and software. However, the hardware will leverage existing off-the-shelf products. A video camera, processing unit, standard LCD monitor and a network switch is all the hardware needed. eyeQ.'s software follows the "Software as a Service" (SaaS) model. Our patent-pending methodologies (application 61/622,616) and trade-secret algorithms are what provide us competitive advantage over new entrants. As a result, the value-add of our product is the ability to deliver real-time personalized marketing and promotions to the consumer and detailed reports to the retailer."); <br>- eyeQ Business Plan at 14: |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**




- eyeQ TVL February 2012 Presentation at 5:24-8:45 (similar to above disclosure in eyeQ Business Plan);
- eyeQ TVL February 2012 Presentation at 7:19-7:30 (collecting demographic information including sex (“FEMALE”), ethnicity (“WHITE”), and approximate age (“30-34”):

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | <br><br>- eyeQ TVL February 2012 Presentation at 7:25-44 (eyeQ system using demographic information (including approximate age and gender) as "inputs" for eyeQ's personalized marketing that is based on that demographic characteristic);<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| **[20.B]** (b) using one or more information monitoring devices to gather information about the persons in the group of persons at the location, | *See* above regarding substantively identical limitation 1.A. |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| **[20.C]** wherein (i) the persons are each in proximity of at least one of the one or more information monitoring devices, | *See* above regarding substantively identical limitation 1.B. |
| **[20.D]** wherein (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both, | *See* above regarding substantively identical limitation 1.C. |
| **[20.E]** (iii) the one or more information monitoring devices comprise one or more video image devices; | *See* above regarding substantively identical limitation 1.D. |
| **[20.F]** (iv) the step of gathering information using the one or more information monitoring devices comprises gathering a demographic characteristic of the persons in the group of persons using the one or more video image devices, wherein the demographic characteristic is selected from a group consisting of gender of the persons, approximate age of the persons, and combinations thereof, | *See* above regarding substantively identical limitation 1.E. |
| **[20.G]** (v) the step of gathering information using the one or more information monitoring devices comprises gathering a tracking characteristic of the persons in the group of persons, wherein the tracking characteristic of the persons is selected from a group consisting of movement of the persons relative to the one more information monitoring devices, eye movement of the persons tracked by the one or more video image devices, and combinations thereof, | *See* above regarding substantively identical limitation 1.G. |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| **[20.H]** (c) analyzing using (A) the server, (B) the one or more databases, or (C) both the information gathered by the information monitoring devices, wherein the analyzed information comprises the demographic characteristic of the persons and the tracking information of the persons, | *See* above regarding substantively identical portion of limitation 1.I. |
| **[20.I]** (d) utilizing the analyzed information to determine the effectiveness of the advertisement campaign directed to persons having the particular demographic characteristic, and | EyeQ Prior Art discloses, either expressly or inherently, (d) utilizing the analyzed information to determine the effectiveness of the advertisement campaign directed to persons having the particular demographic characteristic. *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plan at 2 ("Analyzing this data real-time can provide the retailer with information about the **effectiveness of** store layout, merchandising, product mix and positioning, inventory levels, sales team positioning, and **in-store promotion**.")<br>- eyeQ Business Plan at 2 ("create at-shelf behavior reports for the retailer");<br>- eyeQ Business Plan at 6, 14 ("eyeQ will also provide the retailer with real-time pre-configured reports. Our web based interface will allow the retailer to generate real-time individual store, multi-store, or corporate wide dashboards. See Exhibit 5 for a sample retailer report."): |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| |  <br>- eyeQ TVL February 2012 Presentation at 9:37-10:01 (similar):<br> <br>- eyeQ TVL February 2012 Presentation at 9:40-10:00 (assessing effectiveness via "percentage |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | conversion," identifying the product purchased, person taking away the product; this report would help the store to improve marketing initiatives)<br>- eyeQ TVL February 2012 Presentation at 11:00-12:45 (determine the effectiveness ("uplift"; "incremental sales") of the personalized advertisement campaign)<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. *See, e.g.*, all AVA White Paper evidence cited below regarding limitation 20.J. |
| **[20.J]** (e) adjusting the marketing campaign in response to the determination of the effectiveness of the marketing campaign, wherein the adjusting of the marketing campaign is selected from a group consisting of expanding the marketing campaign to one or more additional locations, ceasing the marketing campaign, and modifying one or more of product mix, inventory, and placement to increase the effectiveness of the marketing campaign. | EyeQ Prior Art discloses, either expressly or inherently, (e) adjusting the marketing campaign in response to the determination of the effectiveness of the marketing campaign, wherein the adjusting of the marketing campaign is selected from a group consisting of expanding the marketing campaign to one or more additional locations, ceasing the marketing campaign, and modifying one or more of product mix, inventory, and placement to increase the effectiveness of the marketing campaign. *See, e.g.*, EyeQ Prior Art at:<br>- EyeQ Business Plan at 3 ("used to determine effectiveness of **<u>store layout, inventory management, merchandising, at-shelf promotion</u>**, sales team positioning, and product feedback to the manufacturer"); *id.* at 4 ("The decisions can include **<u>product promotions, placement, inventory levels to carry</u>**, staffing, and pricing.");<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art, (2) the AVA |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | White Paper, and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. *See* AVA White Paper at 3 ("The analytics generated by AVA systems are giving marketers and business communicators valuable new insights into the numbers and characteristics of the audience, including viewing patterns. AVA reports indicate what's actually happening within the proximity of displays, and helps communicators **improve on what they're doing**."); AVA White Paper at 4 ("End-users are applying AVA as a means to make their marketing and communications efforts more effective, by understanding how long their messages should be (based on detected average viewing times), which messages seem to attract and hold people longer, and the characteristics of the audience by time of day and days of the week. Expensive field research to profile audiences at venues might get done once a year, or less, relying on extrapolation and data sampling and therefore providing limited feedback and only a snapshot in time. AVA allows more accurate research to be continuously done, with the results spun back in real time. AVA provides analytics that help media buyers understand how well booked ads perform, all the way through a campaign. AVA is also giving marketers the ability to assess the cause and effect of marketing messaging, mapping sales or other data against audience data."); AVA White Paper at 4 ("In Canada, a digital screen network installed in a major grocery chain uses the nte® Audience Impression Metric Suite (nte® AIM Suite) technology to optimize the messages for brands sold in the health conscious grocery chain. The sales promotion and information network fine-tunes marketing messages for sponsor brands based on viewer patterns that are tracked using sensors mounted above each screen. The analytics are granular to the level of store zones and messaging, providing data on what messaging works best and where. The network steadily fine-tunes its messages and targeting based on what AVA is telling the operators."); AVA White Paper at 7 ("There is also increasing work to drive the Return On Investment argument for these systems. AVA reporting is being blended with software-based content management systems' performance audits and Point of Sale data to develop reports on measurable consumer impacts such as sales lifts, changes in foot traffic patterns or a surge in registration numbers."); eyeQ TVL February 2012 Presentation at 9:05-9:30 (admitting that AVA ("anonymous video analytics") is an existing technology, which eyeQ employs, and which Intel has made a big investment). For example, it would have been obvious in view of the AVA White Paper to modify the eyeQ Prior art to take advantage of the gathered information to "improve" on what the retailer is doing, e.g., by adjusting the marketing campaign in response to the determination of the effectiveness of the marketing campaign, wherein the adjusting of the marketing campaign is selected from a group consisting of expanding the marketing campaign to one or more additional locations, ceasing the marketing campaign, and |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | modifying one or more of product mix, inventory, and placement to increase the effectiveness of the marketing campaign. |
| | |
| **[21.PRE]** 21. The method of 20, wherein | *See* claim 20, above. |
| **[21.A]** (a) the step of gathering information using the one or more information monitoring devices comprises gathering a sentiment characteristic of the persons using the one or more video image devices, and | *See* above regarding substantively identical limitation 1.F. |
| **[21.B]** (b) the analyzed information further comprises the sentiment characteristic of the persons. | *See* above regarding substantively identical portion of limitation 1.I. |
| | |
| **[23.A]** 23. The method of 20, wherein the tracking characteristic comprises movement of the persons relative to the one more information monitoring devices. | *See* above regarding substantively identical portion of limitation 1.G. |
| | |
| **[26.PRE]** 26. The method of claim 20, wherein | *See* claim 20 above. |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| **[26.A]** (a) the location is one or more retail stores, and | EyeQ Prior Art discloses, either expressly or inherently, that (a) the location is one or more retail stores (e.g., Home Depot retail store, or multiple stores). *See, e.g.*, EyeQ Prior Art at:<br>- see evidence and explanations provided above regarding limitation 5.A;<br>- EyeQ Business Plan at 4 ("retail stores");<br>- EyeQ Business Plan at 5 ("eyeQ's flagship product, AtShelf, is a solution integrated at the shelves of retail stores");<br>- eyeQ TVL February 2012 Presentation at 9:51 ("We can do it at a shelf level, at a store level, at a product level, all across the chain.");<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation;<br>- all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| **[26.B]** (b) the persons in the group of persons are customers shopping in the one or more retail stores. | EyeQ Prior Art discloses, either expressly or inherently, that (b) the persons in the group of persons are customers shopping in the one or more retail stores (e.g., at a product shelf within Home Depot to purchase a drill. *See, e.g.*, EyeQ Prior Art at:<br>- eyeQ Business Plan at 14: |



110935473

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

**Exhibit 4 – eyeQ AtShelf**



- eyeQ Business Plan at 5 (“eyeQAtShelf will capture consumer behavior using video cameras installed at or nearby a retailer's shelf. This information captured is analyzed using eyeQ's real-time video analytics algorithms. AtShelf will continuously process **behavior data** for every consumer walking by and **interacting with product on the shelf**. **The information captured includes** consumer demographics, **the order in which products are selected, time spent with each product, promotions offered, and what product they walked off with.**”);
- eyeQ TVL February 2012 Presentation at 7:05-7:40 (system recognizing in real time the person’s sentiment toward a particular product (e.g., interest in a Ryobi or DeWalt drill as evidenced by the person picking up a Ryobi or DeWalt drill, with the drill being specifically identified (and enclosed within a red box and labeled)):

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | <br>- eyeQ TVL February 2012 Presentation at 7:25-44 (eyeQ system recognizing that “she picked up a DeWalt drill”; “this is one of the inputs” for eyeQ’s personalized marketing);<br>- eyeQ TVL February 2012 Presentation at 21:50-22:20 (eyeQ identifies which product the person “touch[es]” or picks up, and interprets that as the person’s “interest” in the product (i.e., their sentiment regarding the product));<br>- all evidence cited above in connection with any limitation providing antecedent basis for any term in this limitation; |

**Exhibit A-14: Invalidity of U.S. Patent No. 10,360,571 in view of eyeQ Prior Art**

| | |
|---|---|
| | - all evidence cited in connection with the above or below limitations.<br><br>To the extent Plaintiff contends that this reference does not disclose this limitation, the limitation would have been obvious to a person of ordinary skill in the art based on this reference either alone or in combination with (1) the general knowledge of one of ordinary skill in the art and/or (2) the teachings of the prior art references set forth in Defendants' other invalidity charts for this patent with respect to this limitation. |
| | |
| **[27.A]** 27. The method of claim 26, wherein the method determines what product within the one or more retail stores the customers are viewing. | *See* above regarding substantively identical portion of limitation 9.A. |